# Exhibit A

Case Information sheet and all pleadings on file
Complaint and Initial Fee Disclosure

## Case Information

A-18-786564-C | Amy Buchanan, Plaintiff(s) vs. Watkins & Letofsky LLP, Defendant(s)

| | | |
|---|---|---|
| **Case Number** | **Court** | **Judicial Officer** |
| A-18-786564-C | Department 4 | Earley, Kerry |
| **File Date** | **Case Type** | **Case Status** |
| 12/24/2018 | Employment Tort | Open |

## Party

**Plaintiff**
Buchanan, Amy

**Active Attorneys ▼**
Lead Attorney
Kemp, James P.
Retained

**Defendant**
Watkins & Letofsky LLP

## Events and Hearings

12/24/2018 Complaint With Jury Demand ▼

Comment
Complaint

EX.A-01

12/24/2018 Initial Appearance Fee Disclosure ▼

**Comment**
Initial Appearance Fee Disclosure

## Financial

Buchanan, Amy

| | | | | |
|---|---|---|---|---|
| Total Financial Assessment | | | | $270.00 |
| Total Payments and Credits | | | | $270.00 |
| 12/26/2018 | Transaction Assessment | | | $270.00 |
| 12/26/2018 | Efile Payment | Receipt # 2018-84344-CCCLK | Buchanan, Amy | ($270.00) |

EX.A-02

Electronically Filed
12/24/2018 1:30 PM
Steven D. Grierson
CLERK OF THE COURT

JAMES P. KEMP, ESQ.
Nevada Bar No. 6375
KEMP & KEMP
7435 W. Azure Dr., Suite 110
Las Vegas, Nevada 89130
(702) 258-1183/(702) 258-6983 fax
jp@kemp-attorneys.com
Attorney for Plaintiff

# DISTRICT COURT

## CLARK COUNTY, NEVADA

***

| | |
|---|---|
| AMY BUCHANAN, | ) |
| Plaintiff, | ) Case No.: A-18-786564-C |
| vs. | ) Dept. No.: Department 4 |
| WATKINS & LETOFSKY, LLP, a Nevada Limited-Liability Partnership; DOES I-X; ROE BUSINESS ENTITIES I-X, | ) **COMPLAINT** <br> ) JURY TRIAL DEMANDED |
| Defendants. | ) **Arbitration Exemption: action seeking equitable or extraordinary relief.** |

COMES NOW THE PLAINTIFF, by and through her counsel, JAMES P. KEMP, ESQ., of KEMP & KEMP, ATTORNEYS AT LAW, and states and alleges causes of action against the Defendant(s) as follows:

## I.   JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter and Parties in this civil action because the Plaintiff is a resident of Clark County, Nevada, the Defendants have ongoing business operations in Clark County, Nevada or otherwise have sufficient minimum contacts with Clark County, Nevada to render them amenable to suit in this jurisdiction under the Nevada long-arm statute, NRS 14.065, and the Constitutions of the United States and the State of Nevada. The amount in controversy is in excess of the jurisdictional limit of Justice Court. Further, all of the acts and omissions complained of herein

occurred in Clark County, Nevada making jurisdiction and venue proper in this court.

## II. CLAIMS FOR RELIEF

### Factual Allegations Common to all Claims

1. The Plaintiff is a United States citizen and was at all relevant times mentioned herein, from approximately April 2016 through approximately November 2017 an employee at the Defendants' place of business, WATKINS & LETOFSKY, LLP in Clark County, NV.

2. Defendant WATKINS & LETOFSKY, LLP is and was, upon information and belief, at all material times mentioned herein a Nevada Limited-Liability Partnership duly organized under the laws of the state of Nevada and, upon information and belief, was and is doing business as WATKINS & LETOFSKY, LLP at 8215 s. Eastern Avenue, Suite 265, Las Vegas, Nevada 89123. This entity is the former employer of the Plaintiff.

3. Doe and Roe Defendants are parties whose names or true identities are not now known to the Plaintiff. However, these defendants are believed to have some responsibility for the acts or omissions complained of herein. Upon discovery of the true name of any party, the Plaintiff will seek to amend this Complaint accordingly.

4. Throughout this Complaint the term Defendants refers to all Defendants both severally and collectively as the context indicates. Defendants are employers as defined in the Americans with Disabilities Act (ADA), NRS 613.310(2), and under NRS 608.011.

5. That the various violations of law which are alleged herein were committed intentionally and/or willfully by all of the defendants.

6. On or about November 2017, the Defendants terminated Plaintiff's employment and discharged her.

7. Defendants failed to pay Plaintiff her final wages, in accordance with NRS 608.020, NRS 608.040, and/or NRS 608.050, these final wages including substantial amounts of contractual pay that remains outstanding, due, and owing to the Plaintiff. More than thirty (30) days has passed without Defendants paying Plaintiff her final wages.

8. Plaintiff began working for Defendants in April 2016. At all times she was employed as an Associate Attorney. From approximately April 2016 through September 2016 Plaintiff was employed on a full-time basis at a salary of $65,000 per year. Plaintiff was eligible for performance based bonuses of $50.00 per hour for each billable hour worked in excess of 160 billable hours in one month. In this full-time role Plaintiff worked between 40 and 60 hours per week.

9. In September 2016 the Plaintiff's symptoms from her serious medical condition became such that she was no longer able to work 40-60 hours per week. Plaintiff submitted a resignation letter on September 2, 2016 with the intent to refrain from working and focus on her health.

10. Plaintiff is a qualified person with a disability under the Americans with Disabilities Act (ADA). She has a serious medical condition that impacts upon and substantially limits her in the performance of her major life activities including, but not limited to, thinking, sleeping, and working. Her symptoms include constant pain and at various times some or all of the following: problems sleeping, fatigue, difficulty thinking clearly, difficulty performing everyday tasks, stress and anxiety, depression, and migraine headaches. She also has disabilities related to a motor vehicle accident

EX.A-05

that she suffered and these musculoskeletal conditions and limitations also constitute disabilities under the ADA.

11. Plaintiff was capable of performing the essential functions of her job with Defendants, with or without a reasonable accommodation.

12. In September 2016 Plaintiff's symptoms were such that she could no longer continue to work the 40-60 hours per week full-time schedule that she had been working. She was also being scheduled for a surgical procedure.

13. Plaintiff informed the Defendant's management of her inability to continue to work full-time hours and that she was having surgery and that she would have to stop working. Rather than accommodate the Plaintiff with a reduced schedule and leave of absence, Defendant told Plaintiff to submit a resignation letter, which Plaintiff did on or about September 2, 2016. There was no interactive process engaged in by the Defendant at this time.

14. Plaintiff performed an additional 8 hours of work on an independent contractor basis after September 2, 2016 for which she has never been paid.

15. In December 2016 the Plaintiff agreed to return to work with Defendant, but only if she could work a reduced part-time 20 hour per week schedule. Defendant agreed to this accommodation and it was determined that Plaintiff would work 20 hours per week for $31.25 per hour which is $32,500 annually. Plaintiff would be eligible for the performance based bonuses just as any other Associate Attorney working for Defendant.

16. Although the Plaintiff and Defendant agreed to a contract of employment and an accommodation under the ADA, the Defendant never honored and performed the agreement to accommodate the Plaintiff with the reduced schedule employment. It

EX.A-06

instead piled work onto the Plaintiff and told her to "sink or swim" giving her no clerical support and expressly or imliedly threatening to terminate her employment if she did not complete a volume of work which Defendant knew would violate the limitations placed on Plaintiff's work ability by her doctor by making her work in excess of the 20 hours per week that was agreed to. Indeed the Plaintiff wound up having to essentially work a full 40-60 hours per week, only now was being paid only half of the compensation that a full-time Associate Attorney would be paid. Moreover, the Defendant engaged in bad faith manipulation of Plaintiff's billable hours and arbitrarily reduced them so as to disqualify the Plaintiff from receiving the performance bases bonuses.

17. Defendant repeatedly admitted that it was forcing Plaintiff to work more than the 20 hours prescribed by Plaintiff's doctor and agreed to by the Defendant. Defendant agreed to compensate the Plaintiff for the extra work that Plaintiff performed; however, the Defendant failed and refused to actually pay the money and it specifically relied upon its own bad faith breach of its promise to pay to attempt to coerce the Plaintiff into accepting less wages than she was actually owed. Indeed, when the Plaintiff filed a complaint with the Nevada Labor Commissioner for her unpaid wages the Defendant attempted to deny that it owed her the wages and used that denial to try to force the Plaintiff to give the Defendant a discount on the due and owing wages that were outstanding and owed to Plaintiff.

18. Defendant unlawfully attempted to withhold wages from Plaintiff, or cause Plaintiff to have to rebate wages paid, based on its allegation that the Plaintiff owed Defendant money. This was without having the Plaintiff sign an authorization to withhold wages. Defendant violated NRS 608.100 in this regard.

19. Plaintiff complained about the amount of work that she was being given in light of her restrictions. A compromise was reached in February 2017 whereby the Plaintiff would work 30 hours per week (which became 32 hours) starting on March 1, 2017.

20. Defendant again breached its agreement to accommodate Plaintiff's disability by continuing to force Plaintiff to work beyond the reduced hours that were agreed to. Plaintiff continued to be forced to work 40-60 hours per week and was not being properly paid for her work.

21. In May 2017 Plaintiff told Defendant that she could not continue to work beyond the hours that they had agreed to and that she needed to focus on her health. Defendant, rather than living up to the accommodation that it has promised and agreed to, placed Plaintiff on a medical leave of absence.

22. In June 2017 Plaintiff provided Defendant with additional information about her disability. Defendant demanded a letter from Plaintiff's healthcare providers regarding restrictions and how many hours Plaintiff could work. Plaintiff provided the letter to Defendant in August 2017, but Defendant ignored the letters. Plaintiff sent weblinks to all recommended work accommodations provided by the Job Accommodation Network (JAN), but these too were ignored.

23. Instead of providing an accommodation or engaging in a reasonable interactive process to determine appropriate accommodations, the Defendant instead cancelled the Plaintiff's health insurance. Plaintiff confronted Defendant on this and her health insurance was reinstated.

24. Plaintiff continually demanded, both verbally and in writing, that her outstanding wages be paid. Defendant repeatedly stated that she would be paid her wages, but

6

never fully paid what Plaintiff is owed. Plaintiff calculates that she is owed wages from Defendant in the approximate amount of $14,000.00

25. Plaintiff, after it became apparent that Defendant was not going to pay her outstanding wages due, filed a complaint for wages with the Nevada Labor Commissioner (note that this complaint was eventually closed after Defendant falsely disputed the matter and offered only a fraction of what was due which Plaintiff declined to accept). On November 16, 2017 the Defendant acknowledged to Plaintiff that it had received her Labor Commissioner complaint for wages and that it was cancelling her health insurance as of November 30, 2017 which effectively communicated that the Plaintiff's employment was terminated as of that date. To be clear, the Defendant retaliated against Plaintiff for her having lodged a complaint with the Nevada Labor Commissioner for wages that are due to her.

26. Plaintiff performed at or above the level that her employer had a reasonable right to expect. She had received good reviews and consistent praise for her job performance. Defendants had no genuine and legitimate reason to terminate the Plaintiff's employment and any allegedly non-retaliatory or non-discriminatory reason given by the Defendants is mere pretext for the true reasons of discrimination and/or retaliation as set forth herein.

## A. FIRST CLAIM: BREACH OF CONTRACT

27. All other pertinent paragraphs set forth herein are incorporated here by reference as if fully set forth and re-alleged.

28. Defendant and Plaintiff entered into an agreement whereby the Defendant employed the Plaintiff to work for Defendant as an Associate Attorney.

7

EX.A-09

29. The terms were that the Plaintiff would work 20 hours per week (which was later increased to 30 or 32 hours per week) for the Defendant in return for wages of $32,500 per year (adjusted when the hours increased to 30 or 32 per week).

30. The Plaintiff fully performed, but Defendant demanded or required Plaintiff to work in excess of the number of hours that she agreed to and then failed and refused to pay her additional compensation for the extra hours even after Defendant admitted that it owed the Plaintiff the additional wages.

31. There was an offer, and acceptance, and consideration to support the formation of a contract. There was a meeting of the minds and mutual promises to perform.

32. Defendant breached the contract that was formed and existed between the parties.

33. Plaintiff suffered damages in that she was not provided performance by the Defendant as agreed and she thereby lost the benefit of her bargain. The approximate unpaid wages damages are $14,000 subject to adjustment according to the proof presented at trial.

34. Plaintiff had performed or met all of her obligations including any conditions precedent to the Defendant's obligation to perform.

35. Plaintiff suffered incidental and consequential damages in an amount to be determined at trial.

**B. SECOND CLAIM: BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (Contractual)**

36. All other pertinent paragraphs set forth herein are incorporated here by reference as if fully set forth and re-alleged.

37. The Plaintiff and Defendant entered into a contract.

38. Defendant owed a duty of good faith and fair dealing to the Plaintiff arising from the contract.

39. The Defendant breached the duty of good faith and fair dealing by engaging in misconduct.

40. The Plaintiff suffered damages as a result of the breach of the implied covenant of good faith and fair dealing as more particularly set forth herein.

C. THIRD CLAIM: VIOLATION NRS 608.190

41. All other pertinent paragraphs set forth herein are incorporated here by reference as if fully set forth and re-alleged.

42. Defendants have unlawfully violated the requirements of NRS 608.190 which provides as follows:

> **NRS 608.190  Willful failure or refusal to pay wages due prohibited.** A person shall not willfully refuse or neglect to pay the wages due and payable when demanded as provided in this chapter, nor falsely deny the amount or validity thereof or that the amount is due with intent to secure for the person, the person's employer or any other person any discount upon such indebtedness, or with intent to annoy, harass, oppress, hinder, delay or defraud the person to whom such indebtedness is due.

43. Defendant willfully refused and/or neglected to pay Plaintiff her wages due and payable despite several demands made therefor.

44. Defendant has falsely denied the validity of or the amount of the Plaintiff's unpaid wages with the intent to secure a discount upon the indebtedness that it has for Plaintiff's wages.

45. Defendant has refused and/or neglected to pay the Plaintiff her due and payable wages, and/or has falsely denied the validity of or the amount of Plaintiff's unpaid wages with the intent to annoy, harass, oppress, hinder, delay or defraud the Plaintiff.

EX.A-11

46. The Plaintiff has suffered damages as a result of the Defendant's violation of NRS 608.190.

47. The Plaintiff has been forced to expend costs and incur attorney fees to hire counsel to pursue her rights in this action and the Plaintiff is entitled to recover her fees and costs from the Defendant.

### D. FOURTH CLAIM: WAGES DUE AND OWING WITH STATUTORY PENALTY UNDER NRS 608.040 AND/OR NRS 608.050

48. All other pertinent paragraphs set forth herein are incorporated here by reference as if fully set forth and re-alleged.

49. Defendant failed and neglected to timely pay the Plaintiff her final wages in accordance with NRS 608.020 in that they failed to pay to plaintiff her final wages when due to the plaintiff upon her employment being terminated or within 3 days thereafter. Alternatively the provisions of NRS 608.030 apply to this case.

50. Defendant is liable to Plaintiff for the statutory penalty provided in NRS 608.040 and/or NRS 608.050.

51. Plaintiff has been forced to expend costs and incur fees to hire an attorney to pursue her rights under the law.

### E. FIFTH CLAIM: RETALIATORY DISCHARGE IN VIOLATION OF PUBLIC POLICY UNDER NEVADA LAW.

52. All other pertinent paragraphs set forth herein are incorporated here by reference as if fully set forth and re-alleged.

53. Plaintiff's employment was terminated by Defendants in retaliation for her filing a complaint for unpaid wages to the Nevada Labor Commissioner.

EX.A-12

54. Termination of Plaintiff's employment was in violation of strong public policy of the state of Nevada.

55. Plaintiff suffered mental anguish, embarrassment, shame, loss of reputation, and emotional distress as a direct and proximate result of Defendant's actions.

56. Plaintiff has suffered and will suffer lost wages and/or benefits as a direct and proximate result of the actions of the Defendant.

57. The actions of the Defendant were willful, malicious, fraudulent, or oppressive, and calculated to discourage Plaintiff and other of Defendant's employees from pursuing their rights under Nevada law. The Defendants should be subjected to Punitive and Exemplary damages to deter future conduct of this sort.

58. Plaintiff should be reinstated to her position with all wages, benefits, and seniority restored as though the unlawful and tortious termination had never occurred.

59. Plaintiff has been required to hire an attorney and expend fees and costs to pursue her rights through this action.

F. **DISCRIMINATION UNDER AMERICANS WITH DISABILITIES ACT.**

77. All other pertinent paragraphs set forth herein are incorporated here by reference as if fully set forth and re-alleged.

78. On September 1, 2018 Plaintiff filed a timely charge of discrimination under the Americans with Disabilities Act of 1990 (ADA) as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) with the United States Equal Employment Opportunity Commission (EEOC).

79. Plaintiff exhausted her administrative avenues with respect to that charge in good faith. On September 24, 2018 the EEOC issued a Notice of Right to Sue. Plaintiff

11

EX.A-13

did not receive this notice by mail until September 27, 2018 at the earliest. This action is timely filed.

80. Plaintiff is a qualified person with a disability under the ADAAA in that she has a physical condition that substantially limits her in one or more major life activities including, but not limited to, thinking, sleeping, and working. Her disabling conditions include fibromyalgia and muculokelatal conditions. Plaintiff was able to perform all of the essential functions of her position, with or without a reasonable accommodation.

81. Plaintiff repeatedly informed her superiors, including Dan Watkins, regarding her medical condition and disability and her need for an accommodation. Accommodations including a reduced hour schedule was reasonable and available. Defendant, while stating that it would accommodate Plaintiff, *de facto* denied these requested reasonable accommodations.

82. There are reasonable accommodations available that would permit the Plaintiff to perform the essential functions of her job.

83. Defendants failed or refused to engage in a reasonable interactive process to determine whether there was a reasonable accommodation that would assist the Plaintiff in the performance of her job.

84. Defendants failed or refused to provide the Plaintiff with a reasonable accommodation as required under the ADAAA.

85. After she requested a reasonable accommodation, and was denied one or more reasonable accommodations, Defendants fired the Plaintiff from her job.

86. Plaintiff was discriminated against in violation of the ADAAA.

87. Plaintiff suffered mental anguish, embarrassment, shame, loss of reputation, and emotional distress as a direct and proximate result of Defendant's actions.

88. Plaintiff has suffered and will suffer lost wages and/or benefits as a direct and proximate result of the actions of the Defendant.

89. The actions of the Defendant were willful, malicious, fraudulent, or oppressive, or in reckless disregard to Plaintiff's rights under federal law. The Defendants should be subjected to Punitive and Exemplary damages to deter future conduct of this sort.

90. Plaintiff should be reinstated to her position with all wages, benefits, and seniority restored as though the unlawful and tortious termination had never occurred.

91. Plaintiff has been required to hire an attorney and expend fees and costs to pursue her rights through this action.

## G. RETALATION UNDER AMERICANS WITH DISABILITIES ACT.

92. All other pertinent paragraphs set forth herein are incorporated here by reference as if fully set forth and re-alleged.

93. Plaintiff continued to demand a reasonable accommodation of reduced hour schedule to accommodate her disability. Her demands constituted protected activity under the Americans with Disabilities Act of 1990 (ADA) as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) with the United States Equal Employment Opportunity Commission (EEOC).

94. Defendants' termination of Plaintiff's employment in November 2017 was because of Defendants' retaliation for her asserting and pursuing her rights and opposing Defendants' failure to provide her with a reasonable accommodation under the ADAAA.

13

EX.A-15

95. Defendants' actions were of a kind that would be likely to discourage or dissuade its employees from asserting their rights under federal law or from opposing Defendants' unlawful conduct under the ADAAA.

96. Defendants' actions were retaliatory, illegal, and actionable under the ADAAA.

97. Plaintiff suffered mental anguish, embarrassment, shame, loss of reputation, and emotional distress as a direct and proximate result of Defendant's actions.

98. Plaintiff has suffered and will suffer lost wages and/or benefits as a direct and proximate result of the actions of the Defendant.

99. The actions of the Defendant were willful, malicious, fraudulent, or oppressive, or in reckless disregard of Plaintiff's rights under the ADAAA and calculated to discourage Plaintiff and other of Defendant's employees from pursuing their rights under federal law. The Defendants should be subjected to Punitive and Exemplary damages to deter future conduct of this sort.

100. Plaintiff should be reinstated to her position with all wages, benefits, and seniority restored as though the unlawful and tortious termination had never occurred.

101. Plaintiff has been required to hire an attorney and expend fees and costs to pursue her rights through this action.

### III. DEMAND FOR JUDGMENT FOR RELIEF

The Plaintiff prays judgment against the Defendants, and each of them, as follows:

A. For all applicable remedies under the ADAAA including reinstatement or front pay in lieu of reinstatement, back pay, loss of benefits of employment, general compensatory damages, nominal damages, and punitive damages.

B. Extraordinary relief in the form of an order for reinstatement and to provide reasonable accommodations.

C. All tort damages available for a Retaliatory Discharge in Violation of Public Policy including lost wages and benefits of employment, emotional distress, mental anguish, loss of reputation, punitive damages, and any other legally cognizable and available damages and remedies under this tort action.

D. All damages for the loss of the benefit of the bargain for breach of contract and breach of the implied covenant of good faith and fair dealing, along with any incidental and consequential damages as may be proved at trial.

E. All applicable remedies for Defendants' violation of NRS 608.190.

F. Punitive damages in excess of $15,000.

G. Pre-judgment and Post-judgment interest on all applicable sums due.

H. Money Damages for Plaintiff's unpaid final wages and the statutory penalty of thirty (30) day's pay at Plaintiff's regular rate of pay in accordance with NRS 608.040 or NRS 608.050.

I. For lost wages, general and compensatory damages, reinstatement to employment or front pay in lieu of reinstatement, and punitive damages for Plaintiff's claim of common law retaliatory discharge in violation of public policy.

J. For a trial by jury on all issues that may be tried to a jury.

K. For such other and further relief as the court may deem just and proper.

DATED this 24th day of December, 2018.

/s/ James P. Kemp
JAMES P. KEMP, ESQUIRE
Nevada Bar No. 006375
KEMP & KEMP
7435 W. Azure Drive, Suite 110,
Las Vegas, NV 89130
(702) 258-1183/ (702) 258-6983 (fax)
jp@kemp-attorneys.com
Attorney for Plaintiff

15

EX.A-17

Electronically Filed
12/24/2018 1:30 PM
Steven D. Grierson
CLERK OF THE COURT

JAMES P. KEMP, ESQUIRE
Nevada Bar No. 006375
KEMP & KEMP
7435 W. Azure Drive, Suite 110,
Las Vegas, NV  89130
(702) 258-1183
jp@kemp-attorneys.com
Attorney for Plaintiff

DISTRICT COURT
CLARK COUNTY, NEVADA

AMY BUCHANAN,
               Plaintiff,

vs.

WATKINS & LETOFSKY, LLP, a Nevada Limited-Liability Partnership; DOES I-X; ROE BUSINESS ENTITIES I-X,
               Defendants.

Case No.: A-18-786564-C

Dept. No. Department 4

**INITIAL FEE DISCLOSURE**

      Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for parties appearing in the above entitled action as indicated below:

      AMY BUCHANAN, Plaintiff      $270.00
      TOTAL REMITTED:              $270.00

Plaintiff demands a jury trial.

      DATED December 24, 2018

                                                    /s/James P. Kemp
                                           JAMES P. KEMP, ESQ.
                                           Nevada Bar No. 006375
                                           KEMP & KEMP
                                           7435 W. Azure Drive, Suite 110
                                           Las Vegas, NV 89130
                                           (702) 258-1183
                                           Attorney for Plaintiff

1

EX.A-18