**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

AMY BUCHANAN,

        Plaintiff,

vs.

WATKINS & LETOFSKY, LLP.,

        Defendant.

Case No.: 2:19-cv-00226-GMN-VCF

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 10), filed by Defendant Watkins & Letofsky, LLP ("Defendant"). Plaintiff Amy Buchanan ("Plaintiff") filed a Response, (ECF No. 11), and Defendant filed a Reply, (ECF No. 12).[1] For the reasons discussed herein, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

**I.**     <u>**BACKGROUND**</u>

This case arises from Plaintiff's allegations of workplace discrimination, unpaid wages, and retaliation during her employment as an associate attorney with Defendant, a Nevada law firm. In April 2016, Plaintiff began her employment for Defendant, working on a full-time basis consisting of forty- to sixty-hour workweeks. (Am. Compl. ¶¶ 1, 8, ECF No. 7). Due to injuries sustained in a motor vehicle accident, Plaintiff developed a musculoskeletal condition that causes her stress, anxiety, depression, and migraine headaches, and inhibits her ability to sleep, think clearly, and perform everyday tasks. (*Id.* ¶ 10). By September 2016, Plaintiff's medical condition rendered her unable to continue full-time work. (*Id.* ¶ 9).

---

[1] In light of Plaintiff's Amended Complaint, Defendant's motion to dismiss the initial complaint, (ECF No. 5), is **DENIED as moot**. *See Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("As a general rule, when a plaintiff files an amended complaint, '[t]he amended complaint supercedes the original, the latter being treated thereafter as non-existent.'") (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)).

Plaintiff informed Defendant's management of her disability, as well as an impending surgical procedure that would necessitate a reduced workload or else a leave of absence. (*Id.* ¶ 13). Defendant allegedly refused Plaintiff's request to modify her work schedule and instead instructed Plaintiff to submit a letter of resignation, which she did on September 2, 2016. (*Id.*). Plaintiff subsequently worked an additional eight hours as an independent contractor, for which Defendant never compensated her. (*Id.* ¶ 14).

In December 2016, Plaintiff and Defendant entered an agreement under which Plaintiff would return to work on a part-time basis, limiting her workweek to twenty hours. (*Id.* ¶ 15). Upon her return, Defendant assigned Plaintiff a volume of work that caused her to put in forty- to sixty-hour weeks, despite her only being paid half of what full-time associate attorneys make. (*Id.* ¶ 16). Plaintiff also alleges Defendant manipulated her billable hour records in order to maintain Plaintiff's ineligibility for performance-based bonuses. (*Id.*).

On repeated occasions, Defendant represented to Plaintiff that she would be paid for all hours worked beyond the 20 hours per week recommend by Plaintiff's doctor. (*Id.* ¶ 17). According to Plaintiff, however, Defendant has consistently declined to pay Plaintiff for her time and instead forced her to rebate prior wages paid. (*Id.* ¶ 18). After complaining about her workload, Defendant agreed to a compromise under which Plaintiff would work thirty hours a week, beginning in March 2017. (*Id.* ¶ 19). Defendant allegedly breached this renewed agreement by assigning Plaintiff work requiring up to sixty hours per week. (*Id.* ¶ 20).

In May 2017, Plaintiff again expressed concerns about her workload to Defendant and stated that she needed to focus on her health. (*Id.* ¶ 21). Against Plaintiff's wishes, Defendant placed her on a medical leave of absence rather than accommodating her request for a reduced work schedule. (*Id.*). At Defendant's request, Plaintiff supplied Defendant with a letter from her doctor delineating her work-related limitations. (*Id.* ¶ 22). In response, Defendant allegedly

cancelled her health insurance. (*Id.* ¶ 23). Once Plaintiff confronted Defendant about the cancellation, Defendant reinstated her health insurance. (*Id.*).

Plaintiff continually demanded her unpaid wages verbally and in writing, to which Defendant assured Plaintiff that she would be compensated. (*Id.* ¶ 24). Upon determining that her requests were futile, Plaintiff filed a complaint for wages with the Nevada Labor Commissioner (the "Labor Commissioner"). (*Id.* ¶ 25). On November 16, 2017, after acknowledging it knew of the complaint with the Labor Commissioner, Defendant told Plaintiff that her health insurance would be canceled as of November 30, 2017. (*Id.*). According to Plaintiff, this "effectively communication that [her] employment was terminated as of that date." (*Id.*).

The Labor Commissioner ultimately closed its investigation based, in part, on Defendant's false representations concerning its employment agreements with Plaintiff. (*Id.*). On September 1, 2018, Plaintiff filed a charge of discrimination under the Americans with Disabilities Act ("ADA") with the U.S. Equal Employment Opportunity Commission. (*Id.* ¶ 28).

Plaintiff filed the instant Amended Complaint (the "Complaint") on March 1, 2019, bringing the following causes of action arising from her employment with Defendant and her subsequent termination: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of NRS 608.190; (4) wages due and owing under NRS 608.020–NRS 608.050; (5) tortious discharge; (6) discrimination in violation of the ADA; and (7) unlawful ADA retaliation. (*Id.* ¶¶ 31–101). On March 22, 2019, Defendant filed the present Motion to Dismiss, (ECF No. 10), seeking dismissal of Plaintiff's third, fourth, and fifth causes of action.

## II. LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in a ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in a Ruling on a Rule 12(b)(6) motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by

amendment. *DeSoto v. Yellow Freight Syst., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

Defendant moves to dismiss three of Plaintiff's claims, advancing the following arguments in support: (a) NRS 608.190 does not confer a private right of action and therefore Plaintiff cannot, as a matter of law, bring a claim under this provision; (b) Plaintiff fails to state a claim under NRS 608.020–050 because she does not allege that Defendant terminated her; and (c) the tortoius discharge claim is not cognizable under Nevada law because of the availability of alternative statutory remedies and the private, rather than public nature of Plaintiff's complaint with the Labor Commissioner. (*See* Mot. to Dismiss ("MTD") 6:21–13:28, ECF No. 10). The Court addresses each argument in turn.

### A. NRS 608.190

NRS 608.190 prohibits a person from willfully refusing or neglecting "to pay the wages due and payable when demanded as provided in [NRS Chapter 608]." The parties dispute whether NRS 608.190 confers a private right of action. (MTD 6:21–9:3); (Pl.'s Resp. ("Resp.") 11:18–13:24, ECF No. 11). Because the Nevada Supreme Court has not addressed this question, this Court must predict how the Nevada Supreme Court would decide the issue. *Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). As articulated below, the Nevada Supreme Court's decision in *Neville v. Eighth Judicial Dist. Court in & for Cty. of Clark*, 406 P.3d 499, 502 (Nev. 2017), convinces this Court that NRS 608.190 confers a private right of action.

### *1. Implied Private Right of Action under NRS Chapter 608*

In *Neville*, the Nevada Supreme Court held that "NRS Chapter 608 provides a private right of action for unpaid wages." *Id.* at 500. At issue in that case was whether the plaintiff's NRS Chapter 608 ("Chapter 608") claims for "unpaid wages under NRS 608.016 (payment for each hour worked), NRS 608.018 (payment for overtime), and NRS 608.020 through NRS 608.050 (payment upon termination)," provide for a private judicial remedy or may only be enforced by the Labor Commissioner. *Id.* at 500–01.

The Supreme Court commenced its analysis by noting that Chapter 608 is silent as to whether a private right of action exists. *Id.* at 502. Indeed, the Court continued, NRS 608.180 appears to answer the question by expressly vesting enforcement with the Labor Commissioner rather than the courts. *Id.* (citing NRS 608.180) ("The Labor Commissioner or [her representative] shall cause the provisions of NRS 608.005 to 608.195, inclusive, and 608.215 to be enforced."). Nevertheless, the Nevada Supreme Court recognized that an implied right of action may be inferred from Chapter 608's statutory scheme. *Id.* at 502–3.

The Court looked to NRS 608.140, which states that an "employee" suing for "wages earned and due" may recover a "reasonable attorney fee." *Id.* at 503. Because this provision expressly permits recovery of attorneys' fees, the *Neville* Court determined that the legislature intended to codify a private judicial remedy for unpaid-wage claims under Chapter 608. *See id.* at 504 ("It would be absurd to think that the Legislature intended a private cause of action to obtain attorney fees for an unpaid wages suit but no private cause of action to bring the suit itself.").[2] In doing so, the Court permitted the plaintiff's claims for NRS 608.016, NRS

---

[2] *Neville*'s holding reaffirmed the Court's prior observation in a previous case concerning private rights of action under Chapter 608. *See Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 104 n.33 (Nev. 2008) ("[A] private cause of action to recover unpaid wages is entirely consistent with the express authority under NRS 608.140 to bring private actions for wages unpaid and due.").

608.018, and NRS 608.020–050 to proceed because they "involve allegations that wages were unpaid and due to him," and were linked to NRS 608.140 in the complaint. *Id.*

### 2. Neville *and NRS 608.190*

Here, in light of the *Neville* decision, this Court predicts that the Nevada Supreme Court would treat NRS 608.190 as conferring a private right of action. Like the Chapter 608 provisions before the *Neville* Court, NRS 608.190 concerns unpaid wages, specifically wages willfully or neglectfully denied to an employee when so demanded. Because NRS 608.190 is found within the same Chapter as the provision for recovery of attorneys' fees, NRS 608.140, it follows that *Neville*'s holding extends to NRS 608.190, thus conferring an implied private right of action. Moreover, as was the case in *Neville*, Plaintiff ties her NRS 608.190 claim to NRS 608.140 in her Complaint. (*See* Am. Compl. ¶ 30); *Neville*, 406 P.3d at 504.

Notwithstanding *Neville*, Defendant argues that NRS 608.190 was intended to authorize enforcement solely by the Labor Commissioner. (MTD 6:21–9:16). Defendant points to the statute's pre-1985 version, which expressly contemplated prosecution by the district attorney or Labor Commissioner for Chapter 608 violations. (*Id.* 8:1–8:21). Defendant also contends that because NRS 608.195 was amended to include misdemeanor penalties for violations of NRS 608.005 to 608.190, inclusive, the existence of a private right of action under NRS 608.190 would be inconsistent with the availability of these criminal remedies. (*Id.* 8:15–9:16). The Court is unpersuaded.

Beginning with the statute's pre-1985 version and its express mention of enforcement by the Labor Commissioner and district attorney, the Court disagrees that this legislative history militates in favor of Defendant's position. Rather, the Court tends to agree with Plaintiff that the legislature's removal of this language more plausibly suggests an intent to expand enforcement power beyond the Labor Commissioner and district attorney. *See Dep't of Taxation v. Daimler Chrysler Servs. N. Am., LLC*, 119 P.3d 135, 139 (Nev. 2005)

("[O]missions of subject matters from statutory provisions are presumed to have been intentional."); *see also Coast Hotels & Casinos, Inc. v. Nevada State Labor Comm'n*, 34 P.3d 546, 551 (Nev. 2001) (analyzing the impact of the legislature's deletion of statutory language through amendment).

As for Chapter 608's inclusion of criminal remedies, this does not foreclose a finding that the statutory scheme also provides private, parallel civil remedies. Indeed, the presence of misdemeanor penalties did not preclude the *Neville* Court from construing Chapter 608 as conferring a private right of action for various sections of that Chapter. Defendant does not advance—and the Court cannot discern—any compelling reason as to why the legislature would have intended to limit NRS 608.190 to criminal enforcement while endorsing private civil enforcement with respect to other unpaid-wage provisions in Chapter 608.

In summary, the Court predicts the Nevada Supreme Court would recognize NRS 608.190 as conferring a private right of action as a logical outgrowth of the *Neville* decision. Defendant fails to convince the Court otherwise, particularly because Defendant's preferred interpretation, if adopted, would apply equally to all provisions in Chapter 608. Such an interpretation is foreclosed by *Neville*. Accordingly, the Court denies Defendant's Motion to Dismiss as to this cause of action. Plaintiff's NRS 608.190 claim survives.

**B. NRS 608.020–050**

NRS 608.020, which governs wages due upon termination, provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately." NRS 608.030, which applies to payment upon resignation, prescribes a timeframe under which an employer must provide wages and compensation earned and unpaid. NRS 608.040 and NRS 608.050 provide distinct penalties for an employer's failure to pay wages due once an employee quits, resigns, or is discharged.

Defendant argues that Plaintiff's allegations do not support a claim for violation of NRS 608.020, or its corresponding penalty under NRS 608.050, because Plaintiff does not allege Defendant terminated her. (MTD 10:9–15). According to Defendant, Plaintiff is only entitled to pursue a claim for unpaid wages upon resignation under NRS 608.030, a cause of action Plaintiff pleads in the alternative. (*Id.* 10:16–19).

Contrary to Defendant's contention, Plaintiff alleges that "[o]n or about November 16, 2017, the Defendants terminated Plaintiff's employment and discharged her." (Am. Compl. ¶ 6). The Court recognizes that a paragraph in the Complaint appears to imply that Plaintiff resigned, although this is not expressly alleged. (*See id.* ¶ 25) (alleging Defendant told Plaintiff that "it was cancelling her health insurance as of November 30, 2017 which effectively communicated that the Plaintiff's employment was terminated as of that date."). Nevertheless, the remainder of the Complaint repeatedly states that Defendant terminated Plaintiff. (*See id.* ¶¶ 26, 28, 53, 57–58, 62, 90, 94, 100). While Defendant characterizes these allegations as "bare bones," the Court finds them to be enough at this stage of the proceedings. *See, e.g.*, *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (finding similar allegations sufficient to establish the "discharge" prong of unlawful termination based upon age discrimination). The Court therefore denies Defendant's Motion with respect to this claim.

### C. Tortious Discharge

In Nevada, an employer may generally terminate an at-will employee for any reason without being subject to liability for wrongful discharge. *Smith v. Cladianos*, 752 P.2d 233, 234 (Nev. 1988). However, Nevada recognizes a narrow exception to this rule where an employer discharges an employee for a reason which violates a strong public policy of the state. *D'Angelo v. Gardner*, 819 P.2d 206, 216 (Nev. 1991). To prevail on a tortious discharge claim in Nevada, a plaintiff must establish that she: (1) was terminated by her employer for reasons that "violate[] strong and compelling public policy"; and (2) is without "an adequate,

comprehensive, statutory remedy." *Ozawa v. Vision Airlines, Inc.*, 216 P.3d 788, 791 (Nev. 2009).

Prior to addressing the parties' arguments, the Court first discusses the scope of the public policy exception to the at-will doctrine in Nevada.

### *1. Public Policy Exceptions to Nevada's At-Will Employment Doctrine*

While the Nevada Supreme Court has carved out exceptions to the at-will doctrine, the Court has repeatedly counseled that such exceptions are "severely limited" to "rare and exceptional cases." *See Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989); *Hansen v. Harrah's*, 675 P.2d 394, 396 (Nev. 1984) ("[T]he at-will employment rule is subject to limited exceptions . . . ."); *Cladianos*, 752 P.2d at 235 ("We severely restricted the tort remedy . . . to those rare and exceptional instances where the employer's conduct goes well beyond the bounds of ordinary breach of contract liability."); *Bigelow v. Bullard*, 901 P.2d 630, 632 (Nev. 1995) ("This apparent exception to the at-will rule is a narrow one.").

The Nevada Supreme Court first introduced the public policy exception to the at-will doctrine in *Hansen v. Harrah's*, in which the Court recognized a tortious discharge claim based on an employee's termination in retaliation for filing a worker's compensation claim. 675 P.2d at 396–97. The Court reasoned that "Nevada's workmen's compensation laws reflect a clear public policy favoring economic security for employees injured while in the course of their employment." *Id.* at 396. This consideration, coupled with the absence of an existing, comprehensive statutory remedy, warranted a "narrow exception to the at-will employment rule." *Id.* at 397; *see also Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 885 (Nev. 1999) (reaffirming *Hansen* and Nevada's public policy favoring "economic security for employees injured while in the course of their employment").

Since *Hansen*, the Nevada Supreme Court has recognized public policy exceptions to the at-will doctrine in two categories of cases. Under one line of cases, a tortious discharge claim

is properly asserted where an "employee, in opposition to the employer's directions or policies, *does* something or *refuses* to do something that public policy entitles or empowers the employee to do or not to do." *Bigelow*, 901 P.2d at 634 (emphasis in original); *see, e.g.*, *D'Angelo*, 819 P.2d at 216 ("[I]t is violative of public policy for an employer to dismiss an employee for refusing to work under conditions unreasonably dangerous to the employee."); *Allum v. Valley Bank*, 970 P.2d 1062, 1068 (Nev. 1998) ("A claim for tortious discharge should be available to an employee who was terminated for refusing to engage in conduct that he, in good faith, reasonably believed to be illegal.").

Under a second series of cases, the Nevada Supreme Court has endorsed a "whistleblower" exception to the at-will doctrine. *See Wiltsie v. Baby Grand Corp.*, 774 P.2d 432, 433 (Nev. 1989). Under this exception, a tortious discharge claim may arise from an employee's termination for reporting illegal conduct of an employer when the complained-of conduct frustrates Nevada's ability to enforce laws of the state. *See, e.g.*, *id.* (holding tortious discharge claim is viable where a casino employee reports his employer's illegal gaming activity because Nevada's public policy strongly favors enforcement of gaming laws); *Clark v. Columbia/HCA Info. Servs., Inc.*, 25 P.3d 215, 221 (Nev. 2001) (stating that a doctor reporting a hospital's violations of medical standards is "protect[ed] as a matter of public policy as whistleblowing."); *Reuber v. Reno Dodge Sales, Inc.*, No. 61602, 2013 WL 7158571, at *1 (Nev. Nov. 1, 2013) (unpublished) ("An employee's decision to expose illegal or unsafe practices should be encouraged to the extent he seeks to further the public good rather than private or proprietary interests.").

Beyond these recognized exceptions, the Nevada Supreme Court has routinely declined to adopt new exceptions, thus reinforcing the limited range of public policy tortious discharge claims. *See, e.g.*, *Brown v. Eddie World, Inc.*, 348 P.3d 1002, 1004 (Nev. 2015) (rejecting third-party retaliatory discharge theory on the grounds that it would expand the doctrine of tortious

discharge beyond its narrow scope); *Chavez v. Sievers*, 43 P.3d 1022, 1028 (Nev. 2002) ("[W]e decline to recognize a public policy exception to the employment at-will doctrine based on race discrimination with respect to small employers."); *Valgardson*, 777 P.2d at 900 (declining to recognize an additional exception to the at-will doctrine for age discrimination); *Ainsworth v. Newmont Min. Corp.*, 381 P.3d 588, 2012 WL 987222, at *3 (Nev. Mar. 20, 2012) (unpublished) ("[W]e are not compelled to extend the grounds for a whistleblowing claim beyond the limits set forth in *Wiltsie*.").

Similarly, federal courts interpreting Nevada law have narrowly construed Nevada Supreme Court precedent on tortious discharge and have expressed reluctance to predict new exceptions to the at-will doctrine. *See, e.g.*, *Law v. Kinross Gold U.S.A., Inc.*, 651 F. App'x 645, 649 (9th Cir. 2016) ("[Plaintiff] has failed to show that this is the kind of rare and exceptional case . . . sufficient to state a cause of action cognizable under Nevada law."); *Kersey v. Costco Wholesale Corp.*, 210 F. App'x 561, 562 (9th Cir. 2006) ("The Nevada Supreme Court has never held that a private employer who discharges an employee for exercising her constitutional right to access the courts is liable for tortious discharge."); *Finn v. City of Boulder City*, No. 2:14-cv-01835-JAD-GWF, 2018 WL 473001, at *8 (D. Nev. Jan. 17, 2018) ("Finn does not attempt to show that *Hansen*—or any other Nevada authority—supports the notion that his termination is one of the 'rare and exceptional cases' in which the termination of an at-will employee is actionable in tort."); *Tschirhart v. Reg'l Transp. Comm'n of Washoe Cty.*, No. 3:11-cv-00281-RCJ-WGC, 2012 WL 1684596, at *5 (D. Nev. May 11, 2012) ("[I]t would be inappropriate for this Court to anticipate the creation of any new exception where the Nevada Supreme Court has not spoken to the specific issue, at least in dicta.").

Against this backdrop, the Court examines Plaintiff's theories of liability with respect to her tortious discharge claim.

### *2. Plaintiff's Tortious Discharge Cause of Action*

Plaintiff's tortious discharge claim is premised upon Defendant discharging her after discovering that Plaintiff filed an unpaid-wages complaint to the Labor Commissioner. (*See* Am. Compl. ¶ 57). Alternatively, Plaintiff contends that her complaint to the Labor Commissioner was an act of whistleblowing, by which she informed the proper governmental agency of her reasonable belief that Defendant was in violation of the law and faced retaliation as a result. (*Id.*); (Resp. 15:6–9). As explained below, neither of Plaintiff's theories find support under Nevada law.

As to Plaintiff's first theory, the Court predicts that the Nevada Supreme Court would decline to adopt an additional exception to the at-will doctrine. As discussed, Nevada law only recognizes limited, narrow exceptions to the at-will doctrine. Retaliation for filing a complaint for unpaid wages does not fit comfortably into any established exception. Plaintiff's claim does not implicate Nevada's strong public policy supporting the rights of employees injured on the job, so the *Hansen* exception does not apply. *See State Indus. Ins. Sys. v. Campbell*, 862 P.2d 1184, 1186 (Nev. 1993) ("Our decision in favor of the employees in [*Hansen*] was in accord with our "long-standing policy. . . to liberally construe [Nevada's workers' compensation laws] to protect injured workers and their families."). Nor does the "refusal to violate public policy" exception apply, because there are no allegations that Plaintiff either did, or refused to do, something in violation of public policy at Defendant's direction. *See Bigelow*, 901 P.2d at 635; *D'Angelo*, 819 P.2d at 215–18; *see also Bielser v. Prof'l Sys. Corp.*, 321 F. Supp. 2d 1165, 1171 (D. Nev. 2004) (explaining that *Bigelow* and *D'Angelo* "involve[] a refusal to engage in conduct contrary to public policy").

Turning to the whistleblower exception, Plaintiff contends that "reporting unlawful activity to a state government agency, the Labor Commissioner in this case, constitutes whistle blowing activity that is protected from retaliatory discharge under Nevada common law."

(Resp. 15:6–9). Defendant disagrees, arguing Plaintiff's decision to file a complaint with the Labor Commissioner implicates Plaintiff's private interests rather than public policy. (MTD 13:8–28). The Court agrees with Defendant.

The at-will exception for whistleblower retaliation must emanate from an employee's act of reporting illegal conduct in furtherance of the "public good," rather than an employee's "private or proprietary" interests. *See Wiltsie*, 774 P.2d at 433 ("So long as employees' actions are not merely private or proprietary, but instead seek to further the public good, the decision to expose illegal or unsafe practices should be encouraged.") (quoting *Wagner v. City of Globe*, 722 P.2d 250, 257 (Ariz. 1986)). In *Wiltsie*, the Court found the plaintiff's act of whistleblowing concerned only private interests rather than those of the public because the plaintiff reported illegal conduct to his supervisors, rather than to external authorities. *Id.* While the *Wiltsie* Court did not further demarcate the line between public policy and private interests, the cases the Court cited with approval shed light on the distinction. *See Wagner*, 722 P.2d at 257 ("[W]e conclude that on balance actions which enhance the enforcement of our laws or expose unsafe conditions, or otherwise serve some singularly public purpose, will inure to the benefit of the public."); *Zaniecki v. P.A. Bergner & Co. of Illinois*, 493 N.E.2d 419, 422 (Ill. 1986) (noting the "[Illinois] Supreme Court has shown little willingness to find violations of public policy where the discharge arises out of a purely private relationship," such as an "internal employment dispute").

Here, Plaintiff's act of filing a complaint with the Labor Commissioner concerned her dispute with Defendant over wages due rather than the public interest. Per Plaintiff's allegations, she filed with the Labor Commissioner to vindicate her private interests, namely, to recoup her unpaid wages. (*See* Am. Compl. ¶ 25) ("Plaintiff, after it became apparent that Defendant was not going to pay her outstanding wages due, filed a complaint for wages with the Nevada Labor Commissioner[.]"). The authorities Plaintiff relies upon, *Allum* and *Wiltsie*,

do not support Plaintiff's theory as the whistleblowing in those cases concerned employer illegality and the harm borne by third parties, such as the government or public at large. *See Allum*, 970 P.2d at 1066–67 (applying whistleblower exception where a bank fired a loan officer for informing the Federal Housing Administration of the bank's scheme to avoid compliance with FHA rules and regulations governing loans); *Wiltsie*, 774 P.2d at 433–34 (recognizing Nevada's whistleblower exception protects a casino employee's reporting of illegal gaming conduct because Nevada public policy supports the state's efforts to enforce Nevada gaming law). In this case, by contrast, Plaintiff's efforts to recover her unpaid wages is based on Defendant's harms to her, not to the general public. Under these circumstances, and in light of *Wiltsie*'s distinction between matters of public policy and private interest, the Court is unconvinced that the Nevada Supreme Court would find that the whistleblower exception to the at-will doctrine governs this case.

In short, this Court predicts the Nevada Supreme Court would neither find that this case fits an existing exception to the at-will employment doctrine, nor compels adoption of an additional exception. Given the Nevada's Supreme Court's guarded approach to public policy exceptions to the at-will doctrine, this Court is hesitant to recognize exceptions absent compelling reasons to do so. *See Taylor v. Louisiana Pac. Corp.*, 165 F.3d 36, 1998 WL 822745, at *3 (9th Cir. Nov. 17, 1998) (unpublished) (declining to recognize a new public policy exception to Nevada's at-will doctrine and explaining "[a]s a federal court ruling on state law, we feel no duty to be in the vanguard in changing the state law.") (quoting *Brown v. Link Belt Corp.*, 565 F.2d 1107, 1111 (9th Cir. 1977)); *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) ( "[A] federal court sitting in diversity is not free to create new exceptions" to a state law doctrine, particularly where that state's courts have "painstakingly established the scope"). On the facts presented here, the Court finds it improbable that the Nevada Supreme Court would count this action as among the "rare and

exceptional cases," warranting an exception to the at-will doctrine. *See Valgardson*, 777 P.2d at 900. Therefore, the Court grants Defendant's Motion to Dismiss as it pertains to tortious discharge. And because this claim fails as a matter of law, the Court finds that amendment would be futile. *See Carvalho v. Equifax Info. Servs., LLC*, 615 F.3d 1217, 1232 (9th Cir. 2010). Accordingly, Plaintiff's tortious discharge claim is dismissed with prejudice.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 10), is **GRANTED in part** and **DENIED in part**. Defendant's Motion is **GRANTED** as to the claim for tortious discharge. The Motion is **DENIED** with respect to the claims under NRS 608.190 and NRS 608.020–050.

**IT IS FURTHER ORDERED** that Plaintiff's tortious discharge claim is **DISMISSED with prejudice**. Plaintiff's claims under NRS 608.190 and NRS 608.020–050 survive.

**IT IS FURTHER ORDERED** that Defendant's prior Motion to Dismiss, (ECF No. 5), is **DENIED as moot**.

**DATED** this __15__ day of August, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court