Daniel R. Watkins
Nevada State Bar No. 11881
DW@wl-llp.com
Brian S. Letofsky
Nevada State Bar No. 11836
bletofsky@wl-llp.com
Joseph M. Ortuno
Nevada State Bar No. 11233
jortuno@wl-llp.com
WATKINS & LETOFSKY, LLP
8215 S. Eastern Ave., Ste. 265
Las Vegas, NV 89123
Office:(702) 901-7553; Fax: (702) 974-1297

Attorneys for Defendant, WATKINS & LETOFSKY, LLP., a Nevada Limited Liability Partnership

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AMY BUCHANAN<br><br>Plaintiff,<br><br>vs.<br><br>WATKINS & LETOFSKY, LLP., a Nevada Limited Liability Partnership; and DOES 1-X, inclusive,<br><br>Defendant. | Case No.: 2:19-cv-00226-GMN-VCF<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Watkins & Letofsky, LLP, a Nevada Limited Liability Partnership (hereinafter "W&L"), hereby moves this Court for summary judgement on Plaintiff Amy Buchanan's remaining causes of action, pursuant to Rule 56 of the Federal Rules of Civil Procedure and LR 56-1.

///

///

This motion is made and supported by the attached Memorandum of Points and Authorities, all other pleadings on file in this matter, and any oral argument permitted by the Court at a hearing on this matter.

DATED this 25th day of March, 2020.   WATKINS & LETOFSKY, LLP

By:    /s/ Joseph M. Ortuno
_____
Daniel R. Watkins
Brian S. Letofsky
Joseph M. Ortuno
8215 S. Eastern Avenue, Suite 265
Las Vegas, NV 89123
Office: (702) 901-7553
Fax: (702) 974-1297
Attorneys for Watkins & Letofsky, LLP., a Nevada Limited Liability Partnership

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

W&L is a Nevada limited liability partnership organized and operating under the state laws of Nevada. W&L is a law firm and engaged in the practice of law in the State of Nevada. Plaintiff is an attorney licensed in Nevada and a former employee of W&L. On December 24, 2018, Plaintiff filed her complaint in the Eight Judicial District Court, County of Clark. W&L removed Plaintiff's action on February 8, 2019, under federal question jurisdiction. (ECF No. 1). W&L filed a motion to dismiss and Plaintiff filed a First Amended Complaint (hereinafter, "FAC"). (ECF Nos. 5 & 7).

Plaintiff's FAC states the following claims: First Claim – Breach of Contract; Second Claim - Breach of The Implied Covenant of Good Faith and Fair Dealing under Contract; Third Claim – Violation of NRS 608.190; Fourth Claim – Wage Due and Owing With Statutory Penalty NRS 608.040 and/or NRS 608.050; Fifth Claim – Retaliatory Discharge in Violation of Public Policy; Sixth Claim - Discrimination Under Americans with Disability Act; Seventh Claim - Retaliation Under American With Disability Act. (ECF No. 7). W&L filed a motion to

dismiss Plaintiff's FAC. (ECF No. 10). Plaintiff's fifth claim for retaliatory discharge in violation of public policy, a.k.a. tortious discharge, was dismissed with prejudice by this Court by way of court order on August 15, 2019. (ECF No. 13).

Taking into consideration the undisputed facts in this matter, all of Plaintiff's remaining causes of action fail as matter of law for various reasons. Plaintiff's claims under the Americans with Disabilities Act ("ADA") and as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA) fail because W&L did not at any time relevant to the claim have 15 or more employees. Therefore, W&L is not a "covered entity" or "employer" as defined by the C.F.R. § 1630.2(e) and 42 U.S.C. § 12111(5)(a). Notwithstanding the fact that W&L is not a "covered entity" or "employer" as defined by the C.F.R. § 1630.2(e) and 42 U.S.C. § 12111(5)(a), W&L fully engaged in the interactive process with plaintiff regarding her disability and W&L provided plaintiff the accommodations she requested. Plaintiff's contractual claims fail because she was, at all times while employed by W&L, an at-will employee, not entitled to contract damages as a matter of Nevada law. At no time did plaintiff work for W&L under a written employment contract. Plaintiff was always a salaried employee during her employment with W&L and W&L paid plaintiff all wages and/or bonuses due and owed under that employment relationship. Finally, Plaintiff's wage and hour claims under Nevada Revised Statutes Chapter 608 fail because Plaintiff was paid all wages and/or bonuses due as a result of her employment with W&L and there is no evidence that W&L terminated plaintiff's employment.

## II.

## STATEMENT OF UNDISPUTED FACTS

### A. Plaintiff's Employment at Watkins & Letofsky, LLP

Plaintiff is a former employee of W&L. (ECF No. 7, ¶¶ 1; See also Declaration of Daniel Watkins (Exhibit B), para. 12). W&L is a Nevada limited liability partnership organized and operating under the state laws of Nevada. (Exhibit B, para 2.) Plaintiff began working for W&L in April 2016 as an associate attorney. (ECF No. 7, at ¶¶ 1, 8; Exhibit B, para. 12). From April 2016 through September 2016, Plaintiff worked for W&L and received a salary of $65,000 per

1   year. (*Ibid*.).  In September of 2016, due to various medical conditions, Plaintiff was no longer
2   able to fulfill her duties as an associate attorney and voluntarily resigned from her position. (ECF
3   No. 7, at ¶ 9, 12; Deposition Transcript of Amy Buchanan, attached hereto as Exhibit C, pp. 8-9;
4   Exhibit B, para. 12).  Plaintiff voluntarily submitted a letter of resignation on September 2, 2016
5   with the intent to focus on her health. (Exhibit C, pp. 8-9; Exhibit B, para. 12; *see also* Plaintiff's
6   Resignation Letter attached hereto as Exhibit F).   Plaintiff's First Amended Complaint in
7   conjunction with admissions at her deposition establish she is not making any claim against
8   W&L for her employment from April 2016 to September 2016.  (Ex. C, p. 8:21 – p. 9:9; Ex. C,
9   pg. 141:7-20 Ex. C, pp. 87-88; ECF No. 7).

10        In December 2016, Plaintiff returned to work for W&L. (ECF No. 7, ¶ 15; Exhibit B,
11   para. 13).  At that time, Plaintiff requested that she return to work for W&L at a part time
12   schedule of 20 hours per week to account for her disability and its impact on her ability to work a
13   full time schedule. (Ex. C, pg. 151-154; Exhibit B, para. 13).  W&L agreed to the request for a
14   part time schedule and agreed to pay Plaintiff a salary of 50% of her prior salary, or $32,500.00
15   per year. (Ex. C, pp. 174-75; Exhibit B, para. 13).   In March 2017, Plaintiff's salary was
16   increased to 80% of her original salary, or $52,000.00 per year. (Ex. C, pg. 169: 17-21; Exhibit
17   B, para. 13).

18        At no time did plaintiff and W&L ever agree that Plaintiff would be paid hourly. (Ex. C,
19   pg. 175: 1-7; Exhibit B, para. 14).  Plaintiff agrees that she always received a salary check and
20   that she was an exempt employee. (Ex. C, pp. 172-173; pp. 93-94).

21        During her second stint as an associate attorney with W&L starting in December 2016,
22   Plaintiff's medical condition worsened. (Ex. C, pg. 147: 4-13).  In May 2017, it had become
23   clear to Plaintiff that she could not keep up with the requirements of her position with W&L and
24   that she again needed to "take a step back and focus on [her] health." (See emails by and
25   between plaintiff and W&L attached hereto Exhibit G, WLLLP001364).  Plaintiff suggested that
26   W&L "look for another attorney." (Ex. G, WLLLP001364).  W&L granted plaintiff's request
27   and placed her on an indefinite leave of absence.  (Exhibit C, pp. 70-74; Exhibit B, para. 15).
28   Ultimately, Plaintiff determined that she could not perform the requirements of the associate

attorney position and never returned to work for W&L. (Ex. G, WLLLP001337-39). **At no time, did W&L terminate plaintiff's employment.** Exhibit B, para. 16).

### B. Plaintiff's Americans with Disabilities Act Claims

Plaintiff alleges that W&L violated the ADA in Counts 6 and 7 of her FAC. (ECF 7, ¶¶ 77-101). The only defendant named in the instant litigation is Watkins & Letofsky, LLP, a Nevada Limited Liability Partnership. (ECF No. 7). The deadline to amend the pleading or add parties was November 26, 2019. (ECF No. 25). W&L is a Nevada limited liability partnership that is organized and conducts business in the State of Nevada. (ECF 7, ¶2; Exhibit B, para 2). W&L has never had 15 or more employees during the time period relevant to this litigation. (Ex. C, pg. 134: 7-14; Deposition Transcript of Daniel Watkins, attached hereto as Exhibit D, pp. 204-206; NDETR Employer's Quarterly Reports, attached hereto as Exhibit H).

Defendant W&L anticipates plaintiff may argue that the employee count of Watkins and Letofsky, LLP, a California limited liability partnership, a non-party to this action, should be included in determining whether the defendant, Watkins and Letofsky, LLP, a Nevada limited liability partnership was a "covered entity" or "employer" for the purposes of her claim. Even considering the combined employee count of Watkins and Letofsky, LLP, a California limited liability partnership, and defendant, Watkins and Letofsky, LLP, a Nevada limited liability partnership for all times relevant to this case, defendant W&L was NOT a "covered entity" or "employer" as defined by the C.F.R. § 1630.2(e) and 42 U.S.C. § 12111(5)(a). The combined employee count ranged from 9 to 13 during the entire time plaintiff was employed by W&L. (See Exhibit D, pp. 204-206; Exhibit B, para. 11.)

### C. Plaintiff's Contract Claims

Plaintiff alleges contract claims in counts 1 and 2 of her FAC. (ECF 7, ¶¶ 31-44). Count 1 of Plaintiff's FAC specifically alleges that the terms of her "contract" with W&L "were that the Plaintiff would work 20 hours per week (which was later increased to 30 or 32 hours per week) for the W&L in return for wages of $31.25 per hour." (ECF 7, ¶ 33; *see also* ECF 7, ¶15). Plaintiff alleges that she is owed an hourly rate of $31.25 for every hour she worked over 20 hours per week while she was paid $32,500/year. (Ex. C, 239:11 – 240:9). Likewise, she claims

to be owed for all hours worked over 32 hours per week while she was earning $52,000/year. (*Id.*). Count 1 of the FAC also alleges W&L breached this "contract". (ECF 7, ¶¶ 34 & 36). However, no written contract exists between Plaintiff and W&L. (Exhibit B, para. 17).

In her deposition, Plaintiff recanted this allegation stating that no such agreement was ever made. (Ex. C, pp. 174-175).

> Q. What I'm asking you is: Was there ever a time, specifically, that you spoke to someone at Watkins and Letofsky where there was an agreement that you would receive a set dollar amount for each hour worked?
> A. As in you will receive this number per hour? No.

(Ex. C, pg. 175: 1-7).

Plaintiff also admits she was paid on a salary basis, although that salary changed during her employment with W&L. (Ex. C, pg. 174: 22-24). At her deposition, plaintiff clarified that she understands what it means to be a salaried employee:

> Q. When I asked you if you received a salary, what do you understand salary to mean?
> A. That you are paid an annual amount and not an amount – or a specific amount per hour of work.
> Q. Do you also understand that when you are a salaried employee, you are paid the same amount on a regular basis through the year to total that sum, whatever that salary amount is?
> A. Typically, yes.

(Ex. A., pp. 29-30).

When Plaintiff began working at W&L, her salary was $65,000/year. (*See* Payroll Records for Amy Buchanan, attached hereto as Exhibit E; ECF No. 7, ¶ 1). After her resignation in September of 2016 and her return that following December, Plaintiff's salary was $32,500/year. (Ex. E; Ex. C, pp. 174-175). In March of 2017, Plaintiff's salary was increased to $52,000/year. (Ex. E; Ex. C, pg. 169: 17-21). There is no dispute that W&L paid Plaintiff her salary throughout the entirety of her employment. (Ex. E; Exhibit B, para 18). For each pay period Plaintiff worked, she was regularly compensated as a salaried employee. (Ex. E).

Plaintiff's FAC also alleges that employment agreement included bonus compensation for "each billable hour worked in excess of 160 billable hours in one month." (ECF No. 7, ¶ 8). However, there is no clear allegation in the FAC that she ever had more than 160 billable hours in any given month and was not compensated per the alleged bonus structure. During her deposition, Plaintiff admits that her allegations regarding unpaid bonus monies were based upon calculation of all time she worked at W&L, including non-billable activities such as "support staff work duties or admin, […] plus cleaning, mail, miscellaneous, et cetera," with no distinction for billable versus non-billable hours. (Ex. C, pp. 184-185; pp. 206-207). At no time did plaintiff qualify for a production bonus based on billable hours. (Ex B, para 19).

It is also important to note, Plaintiff admits that all documents that evidence a contract between her and W&L has been provided to her counsel and have therefore been disclosed in this matter. (Ex. C, pg. 145: 14-18). None of the disclosures in this matter include a written contract of any sort between the parties.

### D. Plaintiff's Wage and Hours Claims

Plaintiff's FAC alleges violations of NRS 608.190, NRS 608.040, and NRS 608.050. (ECF No. 7, ¶¶ 45-55). Presumably, these wage and hour claims are tied to Plaintiff's contract claims addressed above. Essentially, they are alternative causes of action relating to the same allegedly unpaid wages previously discussed. Plaintiff admits she was an exempt salaried employee. (Ex. A, pp. 93-94). W&L paid Plaintiff all agreed salary amounts due and owing for all time periods she was employed. (*See* Section C, *supra*). Again, at no time, did W&L terminate plaintiff's employment. (EX. B, para 16).

///
///
///
///

## III.

## LEGAL ARGUMENT

### A.  Legal Standard Under FRCP 56

W&L moves for summary judgment pursuant to Rule 56.  A party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *In re Slatkin,* 525 F.3d 805, 810 (9th Cir. 2008).  The moving party must inform the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).*  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

### B.  W&L is not a Qualified Employer Under the ADA.

The American with Disabilities Act is applicable only to "covered entities" which is defined as an employer with 15 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as, or in the calendar year prior to when, the alleged discrimination occurred.  C.F.R. § 1630.2 (e); 42 U.S. Code § 12111 (5)(a); *Clackamas Gastroenterology Assocs., P. C. v. Wells,* 538 U.S. 440, 441, 123 S. Ct. 1673, 1675, 155 L. Ed. 2d 615 (2003).  To determine the number of employees an employer employs, courts use a "test ... generally called the 'payroll method,' since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Walters v. Metropolitan Educational Enterprises, Inc.,* 519 U.S. 202 (1997).   "The payroll method allows for calculating the  ...  15–employee threshold merely by knowing whether a particular employee was on the payroll during a particular time frame." *Aly v. Mohegan Council,*

*Boy Scouts of Am.*, 711 F.3d 34, 45 (1st Cir. 2013).  Courts have also considered quarterly reports to state or territorial authorities. *See, e.g., Escribano–Reyes v. Professional HEPA Certificate Corp.*, 817 F.3d 380, 384 (1st Cir. 2016); *E.E.O.C. v. Pizza & Sub Express, Inc.*, No. 3:09–CV–85–CDL, 2010 WL 3715751, at *3, *4–5 (M.D.Ga. Sept. 13, 2010); *Yost v. Clark Enters. 2000*, No. 06–1274–JTM, 2007 WL 163764, at *1 (D.Kan. Jan. 19, 2007); *Revels v. Hardwire, LLC*, No. CIV.A. RDB 05–3244, 2006 WL 4662503, at *3 (D.Md. June 14, 2006), *aff'd*, 210 Fed.Appx. 311 (4th Cir. 2006); *Owens v. S. Dev. Council, Inc.*, 59 F.Supp.2d 1210, 1214 & n. 2 (M.D.Ala. 1999), *aff'd*, 228 F.3d 415 (11th Cir. 2000).

      As a Nevada limited liability partnership, W&L reports its quarterly payroll records to the Nevada Department of Employment, Training and Rehabilitation.  Those records clearly show that W&L has not employed 15 or more employees during the relevant time period. (Ex. H).  Moreover, Plaintiff has admitted to this fact in her deposition. (Ex. C, pp. 131-134).  This undisputed fact entitles W&L to summary judgment on Plaintiff's ADA claims as a matter of law.  Plaintiff has offered no evidence in support of her allegation that W&L is a qualified employer with 15 or more employees at any time let alone for the required 20 weeks in a year.  Therefore, with respect to Counts 6 and 7 of Plaintiff's FAC, this Court should grant W&L's motion for summary judgment.

      With respect to any argument of plaintiff that W&L is a covered entity when its employee count is combined with the employee count of Watkins & Letofsky, LLP, a California Limited Liability Partnership, such argument is in error.  Not only are the two companies different, the combined employee count ranged from 9 to 13 employees during the entire time plaintiff was employed by W&L.  Exhibit J includes a summary and multiple reports from Paychex (W&L's payroll company) containing a combined employee count for W&L and Watkins & Letofsky, LLP, a California Limited Liability Partnership during plaintiff's employment with W&L verifying the count range of 9 to 13.

///

///

///

**C.   W&L Satisfied the Requirements of Both the Interactive Process and Reasonable Accommodation.**

Assuming arguendo that W&L was a qualified employer, W&L fully engaged in the interactive process and provided reasonable accommodations. When Plaintiff's first medical issues arose in the Spring of 2016, she voluntarily resigned her employment and she makes no claim in this case for ADA violations related to this first time of employment with W&L.

Upon her return in December of 2016, Plaintiff and W&L engaged in a back and forth discussion regarding her work schedule. Plaintiff requested a part time work schedule of 20 hours per week. W&L obliged. Plaintiff returned to her former position at a reduced schedule of 20 hours per week. Again in March of 2017 Plaintiff and W&L engaged in a back and forth discussion regarding her work schedule. Upon Plaintiff's request, W&L adjusted her work schedule to 32 hours per week. Again, in May of 2017, the parties again engaged in a back and forth dialogue after which Plaintiff determined she just could not perform her job under the medical restrictions. Plaintiff did not resign nor did W&L terminate plaintiff at this time. Instead, plaintiff was placed on indefinite leave of absence to allow her an opportunity to focus on health. (EX. D, p. 126-130; Ex. B, para. 20; EX. G, WLLLP001364.)

**D.   Plaintiff Cannot Establish Retaliation Under the ADA as She Cannot Establish and Adverse Employment Action / Termination**.

Plaintiff alleges in her FAC at Section "G" that the W&L terminated her employment as a result of her continued demands for reasonable accommodation. The facts simply do not support this allegation. At no time did W&L terminate plaintiff's employment. (ECF N. 7; Ex. B, para. 16).

**E.   Plaintiff's Contract Claims Lack Merit.**

  1.   <u>Plaintiff Was an At-Will Employee</u>

Under Nevada law, the absence of a written contract gives rise to the presumption that employment is at will. *Brooks v. Hilton Casinos Inc.,* 959 F.2d 757, 759 (9th Cir. 1992) citing *Vancheri v. GNLV Corp.,* 105 Nev. 417, 777 P.2d 366, 368 (1989). Nevada courts have

consistently employed the at-will presumption as a civil disputable presumption. *Smith v. Cladianos*, 104 Nev. 67, 752 P.2d 233 (1988); *K–Mart v. Ponsock*, 103 Nev. 39, 732 P.2d 1364 (1987). Once recognized, a presumption not only fixes the burden of going forward with evidence, but it also shifts the burden of proof. *Privette v. Faulkner*, 92 Nev. 353, 359, 550 P.2d 404, 408 (1976). There is nothing in the record in this matter that has been produced to rebut the at-will presumption.

An employer can dismiss an at-will employee with or without cause, so long as the dismissal does not offend a public policy of this state. *Ponsock*, 103 Nev. at 47, 732 P.2d at 1369. While Plaintiff has not expressly indicated that her contract claims are based upon the termination of her employment, the law in Nevada is clear on the subject. As an at-will employee, Plaintiff is not entitled to contract damages related to her alleged termination or expectation of future employment. *See generally, Vancheri v. GNLV Corp.,* 105 Nev. 417, P.2d 366, (1989); *Martin v. Sears, Roebuck & Co.,* 111 Nev. 923, 899 P.2d 551, 554 (1995) ("a claim arising from breach of contract has no application to at-will employment" and if a plaintiff fails to show that his employment was anything other than at-will, then "a breach of contract cause of action will not lie").

2. Breach of Contract Claims

A breach of contract claim under Nevada law requires "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.,* 818 F.Supp.2d 1271, 1274 (D.Nev. 2011). Plaintiff has alleged that a valid contract for employment existed between her and W&L. (ECF No. 7, ¶¶ 32 & 41). Plaintiff's breach of contract claims appear to center on two theories of liability: (1) that Plaintiff was not paid for all hours she worked between December of 2016 and May of 2017 (hereinafter "Hours Claim"), and (2) that she was not paid her bonus under the operative bonus structure during that same timeframe (hereinafter "Bonus Claim").

a. Hourly Claims

Plaintiff has also alleged that the employment agreement initially consisted of **salaried employment** at $65,000/year with a bonus structure of $50 per billable hour beyond 160 billable

hours per month. (ECF No. 7, ¶ 1). Plaintiff has testified that the agreement was later changed to a salary of $32,500/year and then to a salary of $52,000/year. (Ex. C, pp. 174-175).

Assuming arguendo that these allegations are all true, Plaintiff's breach of contract claim still fails because W&L performed all requirements under said agreements. *Franconia Assocs. v. United States*, 536 U.S. 129, 142-43 (2002) ("A breach of contract is simply the non-performance of a contractual duty.") (*citing* Restatement (Second) of Contracts § 235(2) (1979); J. Murray, Contracts § 206, p. 417 (2d rev. ed.1974)); *Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 596–97 (2001) (describing a breach of contract as "a simple failure to perform"). W&L paid Plaintiff her salary on a bi-weekly basis for all time periods she worked. (Ex. D). Moreover, Plaintiff accepted those bi-weekly paychecks without protest when they were provided to her. It was only after her relationship with W&L had ended, that Plaintiff conjured the theory that she was an hourly employee. (ECF No. 7). An allegation which, during her deposition, Plaintiff admitted was untrue.

> Q. What I'm asking you is: Was there ever a time, specifically, that you spoke to someone at Watkins and Letofsky where there was an agreement that you would receive a set dollar amount for each hour worked?
> A. As in you will receive this number per hour? No.

(Ex. A, pg. 175, ll. 1-7).

An employee who works on a salary basis is defined as one who "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602; 29 U.S.C.A. § 213(a)(1); *Hackett v. Lane County*, 91 F.3d 1289 (9th Cir. 1996); BLACK'S LAW DICTIONARY 1364 (8th ed. 2004) ("An agreed compensation for services – esp. professional or semiprofessional services – usu. paid at regular intervals on a yearly basis, as distinguished from an hourly basis"). Plaintiff agreed to work for W&L as an exempt salaried professional. (Ex. C, pg. 175: 1-7). Plaintiff also understood what it meant to be a salaried professional. (Ex. C, pp. 29-30). Plaintiff even admits she was an exempt employee not entitled to overtime. (Ex. A, pg. 93:23-25).

Assuming the terms of the purported employment agreement exactly as Plaintiff has alleged and admitted them, W&L fulfilled its obligations by paying her the negotiated salary. As a salaried employee, Plaintiff has no right to change her mind after-the-fact and demand hourly wage. This is true despite the number of hours she worked. This Court cannot allow Plaintiff to rewrite the alleged employment contract in a manner that imposes new obligation on Defendant. *See, e.g., Griffin v. Old Republic Ins. Co.*, 122 Nev. 479, 483, 133 P. 3d 251, 254 (2006) ("[W]e [will not] attempt to increase the legal obligations of the parties where the parties intentionally limited such obligations." (internal quotations omitted)).

Having recanted her allegation that she was an hourly employee and having admitted she was in fact a salaried employee, Plaintiff has dealt a fatal blow to her Hours Claim. Plaintiff had every right to renegotiate her salary amount, which she did on two separate occasions. However, she cannot retroactively change the terms of her agreement with W&L because she feels her agreed-to salary was insufficient.

### b. Bonus Claims

Plaintiff's Bonus Claim is equally flawed. Plaintiff has alleged that the agreed to bonus structure at W&L during the relevant time period was that associate attorneys would be paid $50 per hour for each *billable* hour in excess of 160/150 hours per month.[1] (Ex. C, pp. 141-43). Plaintiff cannot support this contention with any documents or evidence beyond her testimony. (Ex. A, pp. 142-43). Assuming arguendo that the bonus structure was based upon a 150 hour per month minimum, the most favorable possible interpretation for Plaintiff, she has failed to prove that she ever exceeded that minimum billable hour requirement in any given month between December 2016 and May 2017. When questioned regarding her Bonus Claim at her deposition, Plaintiff testified as follows:

---

[1] Plaintiff claims the bonus structure was initially based upon a 160-hour structure, but also claims that at some point during the relevant time period, W&L told her that her billable hour requirement would be lowered to 150 hours per month. (Ex. C, pg. 142, ll. 20-24). W&L denies that the requirement was lessened for Plaintiff. (Ex. D, pp. 60-61). Moreover, W&L maintains that the bonus structure was based upon a 480 billable hour per quarter system and that the 160 hours per month was merely a benchmark for associates to use in achieving 480 per quarter. (Ex. D, pp. 33-34; pp. 37-38; pp. 46-48). While disputed, these facts are irrelevant to the issues because no matter what the bonus structure was, Plaintiff failed to prove that she ever met even the lower 150 hour per month/450 hour per quarter minimum. Because these disputed facts are not material, they need not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> Q. Have you done any calculation to determine the amount of bonus money you believe you're entitled to from Watkins & Letofsky that you did not receive?
> A. I believe that I put an amount in the initial documentation would be Labor Commissioner --
> Q. Okay.
> A. -- and or the N-E-R-C.
> Q. Other than those documents, do you have any number of computing the amount of bonus that you were not paid by Watkins & Letofsky that you were entitled to?
> A. No. And I actually computed that based on the 160 hours.

(Ex. A, pp. 184-85).

When looking to the NERC documents, Plaintiff alleges $2,820.00 in lost bonuses, a number which is notably *not* divisible by $50. (*See* NERC Remedy Request, attached hereto as Exhibit F). There are no Labor Commissioner documents which reference Plaintiff's Bonus Claim. When questioned as to what documents she relied on to arrive at the $2,820.00 figure, Plaintiff could not specify. (Ex. C, pp. 183-85). In fact, Plaintiff has offered no evidence to corroborate this figure whatsoever. Presumably, this figure is nothing more than speculation and Plaintiff's bald assertion. "[G]ossamer threads of whimsey, speculation and conjecture" are insufficient to defeat a properly supported motion for summary judgment. *Manganaro v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir.1962).

Additionally, Plaintiff testified that she based her calculations on the total number of hours she worked each month, including time spent performing tasks such as "support staff duties or admin, […] cleaning, mail, miscellaneous, et cetera." (Ex. C, pg. 185: 10-24). These tasks are not "billable hours." *See* BLACK'S LAW DICTIONARY 176 (8th ed. 2004) (Defining a "billable hour" as: "A unit of time used by an attorney, law clerk, or paralegal to account for work performed and chargeable to a client"). Even if a jury were to believe that Plaintiff accurately tracked 56.4 hours ($2,820 / $50 = 56.4) above the bonus structure minimum between December 2016 and May 2017 as she claims, Plaintiff's calculation is flawed as it did not account for non-billable hours. Again, Plaintiff offers no evidence that would support the notion that all of her tracked hours were billable. To the contrary, she admits they included non-billable

time as well. (Ex. C, pg. 185). To claim what portion of her hours were "billable hours" versus "non-billable" hours would be no more than conjecture and guesswork.

Even when viewing the Bonus Claim in a light most favorable to Plaintiff, assuming arguendo that W&L was contractually obligated to pay her $50 per hour for *billable hours* in excess of her 150 hours per month minimum, and that her tracking of her hours was accurate, determining how many of her hours were billable/non-billable would be pure speculation at this point. Plaintiff has not, and admits that she cannot, offer any proof of her "billable hours." While bald assertions may suffice at the motion to dismiss phase, Plaintiff must offer proof beyond speculation and conjecture to defeat a motion for summary judgement. *Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 999 (9th Cir. 2010).

### 3. Breach of the Covenant of Good Faith and Fair Dealing Claim

Plaintiff has alleged a breach of the covenant of good faith and fair dealing claim against W&L. (ECF No. 7, ¶¶ 40-44). Specifically, Plaintiff has alleged that W&L breached the covenant by "manipulating the Plaintiff's records and hours to improperly deny the Plaintiff earned bonuses and refusing to pay the Plaintiff all money that she was owed by means of misrepresentation and false pretenses."[2] (ECF No. 7, ¶ 43). "An implied covenant of good faith and fair dealing exists in every Nevada contract and essentially forbids arbitrary, unfair acts by one party that disadvantage the other." *Frantz v. Johnson*, 116 Nev. 455, 465, 999 P.2d 351, 358 n.4 (2000). To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must prove: (1) the existence of a contract between the parties; (2) that defendant breached its duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the contract; and (3) the plaintiff's justified expectations under the contract were denied. *Perry v. Jordan*, 111 Nev. 943, 948, 900 P.2d 335, 338 (1995).

---

[2] If it is Plaintiff's contention that her termination was a breach of the covenant of good faith and fair dealing, such a claim cannot lie in Nevada. Under Nevada law, at-will employment is presumed and the employment relationship "can be terminated without liability by either the employer or the employee at any time and for any reason or no reason." *Martin v. Sears, Roebuck & Co.,* 111 Nev. 923, 899 P.2d 551, 553–55 (1995). Moreover, "a claim arising from breach of contract has no application to at-will employment" and if a plaintiff fails to show that his employment was anything other than at-will, then "a breach of contract cause of action will not lie." *Id.* at 554. At-will employment likewise precludes an employee from claiming a violation of the implied covenant of good faith and fair dealing. *Id.* at 555 (stating that "breach of contract and bad faith discharge are not applicable to at-will employment").

Importantly, the implied covenant does not provide a plaintiff with the opportunity rewrite the contract in a manner that imposes new obligations on the defendant. *Griffin v. Old Republic Ins. Co.*, 122 Nev. 479, 483, 133 P.3d 251, 254 (2006) ("[W]e [will not] attempt to increase the legal obligations of the parties where the parties intentionally limited such obligations." (internal quotations omitted)); *Kaldi v. Farmers Insurance Exchange*, 117 Nev. at 281, 21 P.3d at 21 ("We are not free to modify or vary the terms of an unambiguous agreement."). Where a contract expressly defines the relative rights and responsibilities of the parties, the implied covenant does not provide an avenue to modify, expand, or otherwise rewrite those terms. *Id.*; *NDOT v. Eighth Judicial Dist. Ct.*, 133 Nev. 549, 554-55, 402 P.3d 677, 682-83 (recognizing that "[n]either a court of law nor a court of equity can interpolate in a contract what the contract does not contain," and determining that the defendant did not breach the covenant because the conduct underlying plaintiff's claim was not precluded by their agreement); *see also Kucharczyk v. Regents of Univ. of Cal.*, 946 F.Supp. 1419, 1432 (N.D.Cal. 1996) (the implied covenant of good faith and fair dealing may not be used to imply a term that is contradicted by an express term of the contract); *Grossman v. Columbine Med. Grp., Inc.*, 12 P.3d 269, 271 (Colo. App. 1999) (where the "termination clause expressly set[ ] forth the right of both parties to terminate the contract for any reason[,] ... the physician cannot rely on the implied duty of good faith and fair dealing to circumvent terms for which he expressly bargained.").

Plaintiff's claim fails as a matter of law because she had no "justified expectation" that she would be paid other than on a salary basis or receive a bonus on non-billable hours. *Perry*, 111 Nev. at 900, 900 P.2d at 338. According to Plaintiff, she agreed to work on a salary basis and understood what a salary was. (Ex. C, pp. 174-75; pp. 29-30). Additionally, she admits that she has no basis for her Bonus Claim that she billed enough hours per quarter to qualify her for a bonus. (Ex.C, pg. 185).

The Nevada Supreme Court has stated "[w]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied, damages may be awarded against the party who does not act in good faith." *Hilton Hotels v. Butch Lewis Productions*, 107 Nev. 226, 234, 808 P.2d 919, 923 (1991).

Reasonable expectations are to be "determined by the various factors and special circumstances that shape these expectations." *Id*. at 234, 808 P.2d at 924. No reasonable juror could conclude that Plaintiff justifiably or reasonably expected any more from her employment with W&L than she received. Specifically, that she could not have reasonably expected to be paid other than on a salary basis and she could not have reasonably expected to bonus on non-billable hours.

### E.   Plaintiff's Wage and Hour Claims Fail as a Matter of Law.

Plaintiff has alleged wage and hour claims under NRS 608.040, 608.050, and 608.190. (ECF No. 7, ¶¶ 45-55). "NRS 608.040 and NRS 608.050 provide distinct penalties for an employer's failure to pay wages due once an employee quits, resigns, or is discharged." (ECF No. 13, *Buchanan v. Watkins & Letofsky, LLP*, 2019 WL 3848785 *4 (D.Nev. Aug. 15, 2019)). "NRS 608.190 prohibits a person from willfully refusing or neglecting 'to pay the wages due and payable when demanded as provided in [NRS Chapter 608].'" *Id.* at *3. As shown throughout this Motion, W&L paid Plaintiff all wages due and owed, per her negotiated salary, for all time periods she was an employee. (Ex. E). The only way Plaintiff's NRS Chapter 608 claims are viable is if her claims that she was an hourly employee and/or that she was entitled to bonus pay are viable. Plaintiff's Chapter 608 claims are entirely contingent upon the success of her Hours Claim and her Bonus Claim. Otherwise, Plaintiff's FAC is devoid of any other allegations of unpaid wages.

To reiterate, Plaintiff has admitted that there was never any agreement that she was an hourly employee or that she would be paid hourly. (Ex. C, pp. 185). Moreover, she has admitted she was employed on a salary basis. (Ex. C, pp. 174-175). Because she was employed on a salary basis, Plaintiff was not entitled to any compensation beyond her agreed upon salary. *See* Subsection C(2), *supra*. Therefore, Plaintiff's Hours Claim fails and with it any related Chapter 608 claim fails as well.

With respect to Plaintiff's Bonus Claim, as discussed, Plaintiff has failed to offer any proof that she ever qualified for the agreed-to bonus structure at W&L. *See* Subsection C(3), *supra*. Plaintiff cannot defeat summary judgment on mere speculation, conjecture and bald assertion. *Bull*, 595 F.3d at 999. Plaintiff must set forth ***specific facts*** showing there is a genuine

issue for trial. *Anderson,* 477 U.S. at 248. Therefore, Plaintiff's Bonus Claim fails along with any Chapter 608 claim relating to any unpaid bonus compensation.

In sum, Chapter 608 claims can only be maintained on the condition precedent of unpaid wages or compensation. Here, Plaintiff has failed to prove any unpaid wages or compensation and therefore her Chapter 608 claims fail as a matter of law.

## IV.
## CONCLUSION

For the reasons stated herein, W&L requests the Court grant its Motion for Summary Judgment and dismiss Plaintiff's remaining causes of action with prejudice.

DATED this 25th day of March, 2020.        WATKINS & LETOFSKY, LLP

By:    /s/ Joseph M. Ortuno
_____
Daniel R. Watkins
Brian S. Letofsky
Joseph M. Ortuno
8215 S. Eastern Avenue, Suite 265
Las Vegas, NV 89123
Office: (702) 901-7553
Fax: (702) 974-1297
Attorneys for Watkins & Letofsky, LLP., a Nevada Limited Liability Partnership

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b)(2)(e), I hereby certify that on the **25th day of March, 2020,** I served the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to the Clerk's Office using the CM/ECF system for filing and transmittal of a notice of electronic filing to the following CM/ECF registrants:

James P. Kemp, Esq.

                                           */s/ Farah Kachermeyer*
                                           An employee of WATKINS & LETOFSKY, LLP