# EXHIBIT 1
# DECLARATION OF AMY BUCHANAN

# EXHIBIT 1

JAMES P. KEMP, ESQ.
Nevada Bar No.: 6375
KEMP & KEMP, Attorneys at Law
7435 W. Azure Drive, Suite 110
Las Vegas, NV  89130
(702) 258-1183/258-6983(fax)
jp@kemp-attorneys.com
*Attorney for Plaintiff Amy Buchanan*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| AMY BUCHANAN, | Case No.:  2:19-cv-00226-GMN-VCF |
| Plaintiff, | |
| vs. | |
| WATKINS & LETOFSKY, LLP, a Nevada Limited-Liability Partnership; DOES I-X; ROE BUSINESS ENTITIES I-X, | |
| Defendants. | |

**DECLARATION OF AMY BUCHANAN**

COMES NOW AMY BUCHANAN who hereby declares and states, under penalty of perjury, as follows:

1. I am a resident of Clark County Nevada and over eighteen (18) years of age.

2. I am the Plaintiff in the above-captioned matter.

3. I make this declaration of my own personal knowledge and each assertion contained herein is true and correct to the best of my own personal knowledge, except as to matters stated and made upon information and belief which matters I believe to be true, and if called to testify as to the matters set forth in this Declaration I would testify competently and truthfully to the same.

4. Exhibits 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 to my Opposition to Defendant's Motion for Summary Judgment are all true and correct copies of email correspondence that I have

1

sent, received, or been given copies of including copies that have been produced by Defendant in this case in its initial disclosures, supplements to its initial disclosures, or in response to discovery requests. The Defendant has authenticated these email documents in the deposition of Dan Watkins, individually and pursuant to FRCP Rule 30(b)(6). (See Ex 2 at pp 3-4 for index to locations in deposition where documents are authenticated)

5. Exhibit 13 to my Opposition to Defendant's Motion for Summary Judgment is a true and correct copy of an Employee Roster of Watkins & Letofsky that was prepared sometime between September 1, 2016 and December 5, 2016 that was provided to me likely by email, because I was still receiving firm emails, after I resigned.

6. Exhibit 14 to my Opposition to Defendant's Motion for Summary Judgment is a true and correct copy of my formal charge of discrimination and retaliation, bearing my signature, filed with the Nevada Equal Rights Commission on September 4, 2018.

7. Exhibit 15 to my Opposition to Defendant's Motion for Summary Judgment is a true and correct copy of a screen shot of a text message that I received from Dan Watkins on September 1, 2017 at approximately 4:35 p.m. wherein he admitted that I worked beyond my contracted and agreed time limits and he agreed to pay me for the time that I worked over the agreed limits.

8. Exhibit 16 to my Opposition to Defendant's Motion for Summary Judgment is a true and correct copy of three of my doctor's notes from July and August 2017 indicating that I should limit my work and be accommodated by a reduced schedule of 20 hours of work per week due to my disabilities.

9. Exhibit 17 to my Opposition to Defendant's Motion for Summary Judgment is a true and correct copy of correspondence dated January 25, 2018 that I received from the

Nevada Labor Commissioner's Office that included a response to my Labor Commissioner complaint filed against W&L authored by Dan Watkins.

10. I began working for Watkins & Letofsky, LLP at its Las Vegas office in April 2016. At all relevant times I was employed as an Associate Attorney. From approximately April 2016 through September 1, 2016 I was employed on a full-time basis at a salary of $65,000 per year. In this full-time role I typically worked between 40 and 60 hours per week. I was eligible for performance based bonuses of $50.00 per hour for each billable hour worked in excess of 160 billable hours in one month.

11. By September 1, 2016 my symptoms from my serious medical condition became such that I was no longer able to work 40-60 hours per week. I was going to need another spine surgery with an unknown recovery period estimated to be 1-3 months. I submitted a resignation letter on September 2, 2016, as requested by Office Manager Nancy Letofsky, with the intent to refrain from working and focus on my health.

12. I am a qualified person with a disability under the Americans with Disabilities Act (ADA). I have serious medical conditions that impact upon and substantially limit me in the performance of my major life activities including, but not limited to, thinking, sleeping, and working. My symptoms include constant pain and at various times some or all of the following: problems sleeping, fatigue, difficulty thinking clearly, difficulty performing everyday tasks, stress and anxiety, depression, and migraine headaches. I also have disabilities related to a motor vehicle accident that I suffered and these musculoskeletal conditions and limitations also constitute disabilities under the ADA because they limit my abilities to work.

13. Notwithstanding my disabilities I was capable of performing the essential functions of my job with W&L, with or without a reasonable accommodation. I was qualified to

3

work in my position as an Associate Attorney because I had the requisite education, licensure, and experience to perform all of the essential functions of an Associate Attorney. I had successfully performed all of the essential functions of the job for several months or more with no complaints or discipline issued to me.

14. By September 2016 my symptoms were such that I could no longer continue to work the 40-60 hours per week full-time schedule that I had been working. I was also being scheduled for a surgical procedure.

15. I informed W&L's management of my inability to continue to work full-time hours and that I was having surgery and that I would have to stop working. Rather than accommodate me with a reduced schedule and leave of absence, W&L's Office Manager, Nancy Letofsky, told me to submit a resignation letter, which I did on or about September 2, 2016. There was no interactive process engaged in by W&L at this time.

16. I performed an additional 8 hours of work on an independent contractor basis after September 2, 2016 for which I have never been paid.

17. In December 2016 I agreed to return to work with W&L, but only if I could work a reduced part-time 20 hour per week schedule. W&L agreed to this accommodation and it was determined that I would work 20 hours per week but that my $65,000 salary would be also prorated down 50% (to $32,500) which can be further calculated to be $31.25 per hour per the calculation of W&L's Accounting & Billing Coordinator, Susan Watkins. But, the reduction of my pay and tying it to the number of hours that I worked means that I was being paid on the basis of time, hourly, rather than truly on a salary basis. If, as W&L contends, I was truly paid on a salary basis then my salary was at the rate of $65,000 per year. Either way, I was not properly paid and W&L owes me unpaid wages.

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

4

18. In each week that I worked from December 5, 2016 through May 12, 2017, I worked some hours on each Friday, Saturday, and/or Sunday, meaning I worked some hours on each of at least five days per week. I was never the subject of any disciplinary suspension or action. I was told and understood that I could earn performance based bonuses just as any other Associate Attorney working for W&L and I was never told otherwise. Indeed during my employee evaluation, I was informed that I would qualify for bonuses beginning at 150 billable hours because I worked in the Las Vegas office, while the threshold in the Orange County office was 160 billable hours. This was because I was performing administrative functions, such as cleaning the office, processing the mail, copying, running documents to court, etc., that the Associates in the California office were not required to do because they had support staff and services for those functions.

19. Although W&L and I agreed to a contract of employment and an accommodation under the ADA, W&L never honored and performed the agreement to accommodate me with the reduced schedule employment. Instead, W&L assigned the same amount of work or more as it did when I was a full time Associate and continued to refuse to hire any support staff to perform the administrative functions. W&L piled the work on and made it known to me, through Eran Forster, that I had to "sink or swim" with no help or clerical support. I was specifically instructed that Eran Forster, another Associate in the Las Vegas office, could not help me and that I had to "sink or swim." W&L expressly or impliedly threatened to terminate my employment if I did not complete a volume of work which W&L knew would violate my work accommodation for my disability that W&L had agreed to, and which my doctors confirmed that I needed (Ex. 16), by making me work in excess of the 20 hours per week that was agreed to. Indeed I had to essentially work a full 40-60 hours per week or risk termination, and now was

being paid only half of my $65,000 annual salary. Moreover, I learned through a spreadsheet that W&L produced to the Nevada Labor Commissioner that W&L engaged in bad faith manipulation of my billable hours and arbitrarily reduced them so as to disqualify me from receiving the performance based bonuses.

20. I clearly asked for accommodation to include a reduced schedule and help with processing the volume of work including, but not limited to, asking for support staff for the Las Vegas office, or hiring another attorney either as an employee or as an independent contractor. I also requested job restructuring to utilize me in more of a supportive capacity for intake, research, drafting pleadings and overflow coverage which would allow me to truly work the part-time 20 hour schedule that we had agreed to as an accommodation. I suggested that W&L hire some support staff so that I could work just the 20 hours per week that W&L had agreed to; this would not have posed an undue hardship because W&L would have money it saved by my working part-time. Eran Forster was willing to help and assist me whenever possible, but he was told specifically by Dan Watkins not to provide any assistance to me and that I had to "sink or swim" with my cases and workload. W&L repeatedly admitted that it was forcing me to work more than the 20 hour per week part-time schedule (which my doctors ultimately prescribed) agreed to by W&L as a reasonable accommodation. After I confronted them W&L agreed to compensate me for the extra work that I performed (Ex. 15); however, W&L failed and refused to actually pay the money and it specifically relied upon its own bad faith breach of its promise to pay to attempt to coerce me into accepting less wages than I was actually owed. (Ex. 17) Indeed, when I filed a complaint with the Nevada Labor Commissioner for my unpaid wages W&L attempted to deny that it owed me the

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

wages and used that denial to try to force me to give W&L a discount on the wages that were outstanding and owed to me. (Id.)

21. I complained about the amount of work that I was being given and my inability to get it done in 20 hours per week in light of my restrictions. A compromise was reached with Dan Watkins in February 2017 whereby I would work 30 hours per week (which became 32 hours) starting on March 1, 2017. Rather than 5 hours per day Monday through Thursday, I would work 8 hours per day Monday through Thursday, totaling 32 hours per week.

22. The new reduced schedule accommodation was also not honored. W&L again breached its agreement to accommodate my disability by continuing to force me to work beyond the reduced hours and days that were agreed to by requiring a volume of work that could not be completed in the schedule agreed to. I continued to be forced to work 40-60 hours per week, working at least some hours on Friday, Saturday, and/or Sunday, and was not being properly paid for my work.

23. In May 2017, I told W&L that I could not continue to work beyond the hours that they had agreed to and that I needed to focus on my health. Rather than living up to the accommodation as promised and agreed to, W&L placed me on an involuntary, unpaid, and indefinite medical leave of absence. I was told that this was so I could have time to figure out what was going on medically. I advised that I expected some answers in June, about a month or so later. I was going through some medical testing, but I did want to continue to work and be employed, just with the reduced hours accommodation that I had been promised and to which W&L had agreed. I was willing to explore other accommodations as well and I hoped that W&L would continue to discuss accommodations based on what I was told. (Exs. 9 & 10)

KEMP & KEMP
ATTORNEYS AT LAW
7435 W. Azure Drive, Suite 110
LAS VEGAS, NEVADA 89130
Tel. (702) 258-1183 ♦ Fax (702) 258-6983

24. In June 2017 I provided W&L with additional information about my disability. W&L demanded a letter from my healthcare providers regarding restrictions and how many hours I could work. I provided doctor notes from three providers to W&L in July and August 2017 (Ex. 16), but W&L ignored the notes and their reflected restrictions. I sent weblinks to all recommended work accommodations provided by the Job Accommodation Network (JAN) (Ex. 5), but these too were ignored.

25. Instead of providing an accommodation or engaging in a reasonable interactive process to determine appropriate accommodations as it said in May that it would (Exs. 9 & 10), W&L cancelled my health insurance on August 31, 2017. I learned about this cancellation from a doctor's office. I confronted W&L on this and my health insurance was reinstated a week later.

26. I continually demanded, both verbally and in writing, that my outstanding wages be paid. W&L repeatedly stated that I would be paid my wages, but never fully paid what I am owed. I calculate that I am owed wages from W&L in the approximate amount of $14,486.95. (Ex. 7)

27. After it became apparent that W&L was not going to pay my outstanding wages due, I filed a complaint for wages with the Nevada Labor Commissioner in September 2017. This complaint was eventually closed after W&L falsely disputed the matter and offered only a fraction of what was due which I declined to accept. On November 16, 2017 W&L acknowledged to me that it had received my Labor Commissioner complaint for wages and that it was cancelling my health insurance as of November 30, 2017 which effectively communicated that my employment was terminated as of that date.

28. I performed at or above the level that my employer had a reasonable right to expect. I received good reviews and consistent praise for my job performance.

8

29. W&L's forcing me onto a medical leave of absence rather than accommodating me with the reduced hour schedule as it had promised, and refusing to engage in any further interactive process that would enable me to work constituted a continuing violation of the ADA that went on each and every day until approximately November 30, 2017.

30. All of the agreements and contracts set forth herein were agreed to by W&L's management personnel and owners including Dan Watkins and/or Brian Letofsky.

31. W&L operates their two offices in California and Nevada as one law firm. They share staff, administrative services, a website, an email server, a toll-free telephone number, and payroll services.  They hold themselves out to the public as being one law firm with two offices serving clients throughout California and Nevada.  There are only the two owners whose names appear on all public displays, Dan Watkins and Brian Letofsky.

32. I reviewed my W&L work time records. They show I performed some amount of work on each of the following days which includes Saturdays, Sundays, and/or Fridays. Here is a summary of the voluminous time records I reviewed and have personal knowledge of:

> December 2016: 5th - 23rd and 26th - 30th (123.2 hours)
> January 2017: 1st - 13th, 16th - 20th, 23rd – 27th and 30th - 31st (189.7 hours)
> February 2017: 1st-24th and 26th-28th (174.3 hours)
> March 2017: 1st-3rd, 6th -17th and 20th-31st (155.3 hours)
> April 2017: 1st -7th, 9th-21st and 23rd-30th (172.6 hours)
> May 2017: 1st-5th, 8th-13th, 15th -19th, 22nd, 25th and 30th-31st (88.1 hours)
> June 2017: 5th, 6th, 10th, 12th, 19th, 21st, 22nd, and 27th (2.7 hours)

I note that even after I was involuntarily placed on unpaid medical leave on May 12, 2017, I was still performing work for W&L, but I was not paid on regular payroll after the period ending May 15, 2017.

9

33. I have read or been made aware of any and all other factual assertions contained in the Opposition drafted by my attorney. I assert and believe that the facts set forth therein are true and correct to the best of my knowledge, information, and belief.

Pursuant to 28 U.S.C. § 1746 I declare under penalty of perjury that the foregoing is true and correct. Executed on 4-29-20

_A. Buchanan_
AMY BUCHANAN