# EXHIBIT 17
# W&L RESP. TO LABOR COMMISSIONER

Sent to Amy Buchanan on January 25, 2018 admitting that some money is owed

EXHIBIT 17

## STATE OF NEVADA



BRIAN SANDOVAL
GOVERNOR

C.J. MANTHE
DIRECTOR

SHANNON M. CHAMBERS
LABOR COMMISSIONER

X  OFFICE OF THE LABOR COMMISSIONER
3300 WEST SAHARA AVENUE, SUITE 225
LAS VEGAS, NEVADA 89102
PHONE: (702) 486-2650
FAX (702) 486-2660

OFFICE OF THE LABOR COMMISSIONER
1818 COLLEGE PARKWAY, SUITE 102
CARSON CITY, NV 89706
PHONE: (775) 684-1890
FAX (775) 687-6409

Department of Business & Industry
OFFICE OF THE LABOR COMMISSIONER

January 25, 2018

AMY BUCHANAN
19 MESQUITE VILLAGE CIRCLE
HENDERSON, NV 89012

Reference:   Wage claim filed on 11/5/2017
File No. NLC-17-003937

Please find attached a copy of a reply from Daniel R. Watkins representing Watkins & Letofsky, LLP, for your review. The employer has extended a settlement offer. Please review the enclosed documents and respond if you accept the settlement. If so, I will request payment to resolve this claim.

However, if you disagree with the enclosed correspondence, you may submit your written response and any supporting documents. The due date for this information is **2/5/2018**. Be advised, if you fail to respond or fail to support your claim, it will be closed with our office.

Thank you for your cooperation,

Ivelys Franco
Compliance/Audit Investigator II

1

## Response of Watkins & Letofsky, LLP
File No. NLC-17-003937

Ms. Buchanan worked for Watkins & Letofsky, LLP (WL) as an exempt, salaried associate attorney. She qualified exempt under the professional exemption.

At the time Ms. Buchanan worked for WL, the firm only paid a bonus to associates on a quarterly basis for those associates whose billable time exceeded 480 hours in a quarter (an average of 160 hours a month). The firm pays $50 per hour for hours worked in excess of 480 hours per quarter. WL works off a calendar quarter. (The 160 minimum monthly billable mark is a goal for full time associate attorneys. It is at this point that they can pay for themselves and the operational expense associated with their work. (The minimum quarterly basis for bonuses was increased to 495 after Ms. Buchanan stopped working for the office.))

Ms. Buchanan first worked for WL from April 11, 2016 to September 2, 2016. Ms. Buchanan resigned on September 2, 2016. (See letter dated September 2, 2016.) WL paid her for the 2 days she worked in the time period of September 1, 2016 – September 15, 2016 of the pay period for a total of $361.02. Her daily rate at $65,000.00 was $178.08. (See AEB Summary.Page1.Final.)

Ms. Buchanan claims she worked an additional 8 hours on September 21, 22, and 23, 2016, finishing up a few matters. She did not present these hours on her timesheet for September 2016. Ms. Buchanan first presented this claim for time on July 8, 2017. Because she did not present this time in September 2016, we were not able to include it in the bills to the client and as such, we lost this time. If this time is to be considered for pay, it should be paid at an hourly basis at $31.25/hour. This hourly rate is calculated the hourly rate by dividing her annual salary of $65,000 by 2080 hours. For 8 hours, she would be entitled to $250.00.

Ms. Buchanan returned to WL on December 5, 2017. The terms included her working at 50% the time requirement for 50% pay of her annual salary of $65,000.00, or $32,500.00. Ms. Buchanan worked a 50% schedule as an accommodation for a medical condition. As such, Ms. Buchanan was required to produce a minimum of 80 billable hours per month. Important to note, a billable hour is one that is attributable to work on the files that can be passed on to the client. Many of the hours that Ms. Buchanan claims in her paperwork were not billable hours. She routinely billed for administrative tasks that do not measure her performance as it relates to minimum billable hours. The attachments entitled AEB Summary.Page1.Final and AEB Summary.Page2.Final provide an analysis of Ms. Buchanan's billable time v her timesheet entries.

Upon her return, Ms. Buchanan routinely billed more than 80 hours per month. We cautioned Ms. Buchanan from working more than 80 hours due to her medical condition and accommodation. We agreed to pay and did pay Ms. Buchanan her salary of $32,500 / year during this time. (See AEB Summary.Page2.Final.)

**Response of Watkins & Letofsky, LLP**
File No. NLC-17-003937

Ms. Buchanan worked for Watkins & Letofsky, LLP (WL) as an exempt, salaried associate attorney. She qualified exempt under the professional exemption.

At the time Ms. Buchanan worked for WL, the firm only paid a bonus to associates on a quarterly basis for those associates whose billable time exceeded 480 hours in a quarter (an average of 160 hours a month). The firm pays $50 per hour for hours worked in excess of 480 hours per quarter. WL works off a calendar quarter. (The 160 minimum monthly billable mark is a goal for full time associate attorneys. It is at this point that they can pay for themselves and the operational expense associated with their work. (The minimum quarterly basis for bonuses was increased to 495 after Ms. Buchanan stopped working for the office.))

Ms. Buchanan first worked for WL from April 11, 2016 to September 2, 2016. Ms. Buchanan resigned on September 2, 2016. (See letter dated September 2, 2016.) WL paid her for the 2 days she worked in the time period of September 1, 2016 – September 15, 2016 of the pay period for a total of $361.02. Her daily rate at $65,000.00 was $178.08. (See AEB Summary.Page1.Final.)

Ms. Buchanan claims she worked an additional 8 hours on September 21, 22, and 23, 2016, finishing up a few matters. She did not present these hours on her timesheet for September 2016. Ms. Buchanan first presented this claim for time on July 8, 2017. Because she did not present this time in September 2016, we were not able to include it in the bills to the client and as such, we lost this time. If this time is to be considered for pay, it should be paid at an hourly basis at $31.25/hour. This hourly rate is calculated the hourly rate by dividing her annual salary of $65,000 by 2080 hours. For 8 hours, she would be entitled to $250.00.

Ms. Buchanan returned to WL on December 5, 2017. The terms included her working at 50% the time requirement for 50% pay of her annual salary of $65,000.00, or $32,500.00. Ms. Buchanan worked a 50% schedule as an accommodation for a medical condition. As such, Ms. Buchanan was required to produce a minimum of 80 billable hours per month. Important to note, a billable hour is one that is attributable to work on the files that can be passed on to the client. Many of the hours that Ms. Buchanan claims in her paperwork were not billable hours. She routinely billed for administrative tasks that do not measure her performance as it relates to minimum billable hours. The attachments entitled AEB Summary.Page1.Final and AEB Summary.Page2.Final provide an analysis of Ms. Buchanan's billable time v her timesheet entries.

Upon her return, Ms. Buchanan routinely billed more than 80 hours per month. We cautioned Ms. Buchanan from working more than 80 hours due to her medical condition and accommodation. We agreed to pay and did pay Ms. Buchanan her salary of $32,500 / year during this time. (See AEB Summary.Page2.Final.)

On March 1, 2017, we agreed to increase Ms. Buchanan's salary to $52,000 per year in exchange for 128 billable hours per month. This increase put Ms. Buchanan at 80%. Ms. Buchanan requested this change in the accommodation. We paid Ms. Buchanan this salary from March 1, 2017 through May 12, 2017 (See AEB Summary.Page2.Final.) On May 12, 2017, Ms. Buchanan went on indefinite medical leave.

After Ms. Buchanan went of medical leave, we changed her password for remote access to the server and work email because she was not supposed to be working as she assessed her medical condition and whether she could return to work on a regular basis. We did not require Ms. Buchanan to check her email or do any work after May 12, 2017. In fact, Ms. Buchanan was placed on a leave of absence so she would not work. Her review of emails served no purpose and provided no gain to the office.

Regarding her claim for a bonus, Ms. Buchanan did not qualify for a bonus at any time while working for WL. She did not work more than 480 hours in a quarter. We did not agree to pay Ms. Buchanan on an hourly basis at any time after her return to WL in December 2016. (See AEB Summary.Page1.Final and AEB Summary.Page2.Final.)

It is important to note that WL paid Ms. Buchanan's portion of her medical insurance from June 2017 through November 2017 to keep her with coverage until she determined whether she could return on a regular basis. The attached Health Insurance History shows the total paid by WL and Ms. Buchanan's unpaid contribution. As such, Ms. Buchanan owes WL $2,473.16 for unreimbursed medical insurance.

While we paid Ms. Buchanan what we agreed to pay her, we are willing to compromise on her claim to resolve the matter. We calculated the percentage of billable hours against the minimum billable hours for full time associates. AEB Summary.Page2.Final shows the percentage of time Ms. Buchanan worked against a minimum billable hours of 160 hours. We calculated the proportionate amount of pay Ms. Buchanan would receive for the percentage of time she worked over the respective 50% or 80% amounts. After adding the additional amount of pay for the extra percentage ($9,375.28) and subtracting the amount already paid to Ms. Buchanan ($1,388.59) and the amount Ms. Buchanan owes to WL for her contribution toward health care ($2,473.16) the balance would total **$5,513.53**. We would agree to pay this amount to fully and finally resolve any and all claims Ms. Buchanan against WL. Ms. Buchanan would need to sign a release of any and all claims.

Please call if you have any questions. I can be best reached on my cell at 949-400-1327.

Thank you,

Dan

**AMY BUCHANAN**
**AETNA INSURANCE HEALTH COVERAGE**
**EFFECTIVE: 03/01/17 - 05/31/17 (Then on leave - WL paid through 11/30/17)**

| MONTH | PREMIUM | ALLOWANCE | CO-PAY |
|---|---|---|---|
| MAR | $401.82 | (275.00) | 126.82 |
| APR | $401.82 | (275.00) | 126.82 |
| MAY | $401.82 | (275.00) | 126.82 |
| JUN | $401.82 | | 401.82 |
| JUL | $401.82 | | 401.82 |
| AUG | $401.82 | | 401.82 |
| SEP | $401.82 | | 401.82 |
| OCT | $401.82 | | 401.82 |
| NOV | $401.82 | | 401.82 |
| TOTAL | $2,812.74 | (825.00) | 2,791.38 |
| PAID | | | (318.22) |
| OWED | | | 2,473.16 |

## CALCULATIONS FOR AMY BUCHANAN'S CLAIM FOR WAGES
### PERIOD: 09/16/16 - 06/30/17

| Start | End | Basis | Work Schedule | Salary / Rate of Pay | Monthly | Bi-Monthly | Required Hours (Full Time) | Timesheet Hours | Billable Hours | Actual % Worked | Variance in Hours | Due (Actual % Worked) (1) | Paid | Due (Actual % Worked) (1) | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/16/16 | 09/30/16 | $65,000 | Hourly | $31.25 | | | | 8.0 | | | | $250.00 | | $250.00 | Additional 8.0 Hours requested in 7/8/17 Email (Not submitted prior to 7/8/17) |
| 12/01/16 | 12/31/16 | $65,000 | 50% | $32,500 | $2,708.33 | $1,354.17 | 160.0 | 123.2 | 109.7 | 69% | (50.3) | $3,713.80 | $2,342.71 | $1,371.09 | Re-Hired 12/5/16; Originally paid for 11 Days (11/15 = 73% of $1,354.17 = $988.54) |
| 01/01/17 | 01/31/17 | $65,000 | 50% | $32,500 | $2,708.33 | $1,354.17 | 160.0 | 189.7 | 160.8 | 100% | 0.8 | $5,416.67 | $2,708.34 | $2,708.33 | |
| 02/01/17 | 02/28/17 | $65,000 | 50% | $32,500 | $2,708.33 | $1,354.17 | 160.0 | 174.3 | 150.1 | 94% | (9.9) | $5,081.51 | $2,708.34 | $2,373.17 | |
| 03/01/17 | 03/31/17 | $65,000 | 80% | $52,000 | $4,333.33 | $2,166.67 | 160.0 | 155.3 | 135.3 | 85% | (24.7) | $4,580.47 | $4,333.34 | $247.13 | |
| 04/01/17 | 04/30/17 | $65,000 | 80% | $52,000 | $4,333.33 | $2,166.67 | 160.0 | 171.1 | 153.6 | 96% | (6.4) | $5,200.00 | $4,333.34 | $866.66 | |
| 05/01/17 | 05/15/17 | $65,000 | 80% | $52,000 | $4,333.33 | $2,166.67 | 80.0 | 76.3 | 61.5 | 77% | (18.5) | $2,082.03 | $845.00 | $1,237.03 | Resigned 5/12/17; $845 paid; didn't receive timesheet until 6/28/17. |
| 05/16/17 | 05/31/17 | $65,000 | Hourly | $31.25 | | | | 11.8 | 10.3 | | | $321.88 | | $321.88 | Hourly |
| 06/01/17 | 06/30/17 | $65,000 | Hourly | $31.25 | | | | 0.7 | 0 | | | | | | Not 2.7; 0.7 for reading emails; changed password on email so AEB would bill for viewing emails. |
| Subtotal | | | | | | | | | | | | $26,646.35 | $17,271.07 | $9,375.28 | |
| Paid on 9/1/17 (Check # 3614 - Not Cashed) | | | | | | | | | | | | | | ($1,388.59) | |
| Due WL for Insurance Through 11/30/17) | | | | | | | | | | | | | | ($2,473.16) | |
| Total Due AEB | | | | | | | | | | | | | | $5,513.53 | |

Notes:
(1) Based on 160 Hours/Month
(2) Paid $216.57 as unearned bonus (excluded from "Paid" amount).

## CALCULATIONS FOR AMY BUCHANAN'S CLAIM FOR WAGES
## PERIOD: 04/11/16 - 09/15/16

| Start | End | Basis | Work Schedule | Salary / Rate of Pay | Monthly | Bi-Monthly | Required Hours (Full Time) | Timesheet Hours | Billable Hours | Actual % Worked | Variance in Hours | Due (Actual % Worked) (1) | Paid | Due (Actual % Worked) (1) | NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 04/11/16 | 04/30/16 | $65,000 | 100% | $65,000 | $5,416.67 | $2,708.33 | N/A | 114.5 | 61.9 | | | | $3,250.01 | | Started on 4/11/16 - No Billing Requirement |
| 05/01/16 | 05/15/16 | $65,000 | 100% | $65,000 | $5,416.67 | $2,708.33 | 80.0 | 54.3 | 54.3 | 68% | (25.7) | Not Disputed | $2,708.34 | Not Disputed | |
| 05/16/16 | 05/31/16 | $65,000 | 100% | $65,000 | $5,416.67 | $2,708.33 | 80.0 | 152.6 | 73.5 | 92% | (6.5) | Not Disputed | $2,708.34 | Not Disputed | |
| 06/01/16 | 06/15/16 | $65,000 | 100% | $65,000 | $5,416.67 | $2,708.33 | 80.0 | 75.0 | 75.0 | 94% | (5.0) | Not Disputed | $2,708.34 | Not Disputed | |
| 06/15/16 | 06/30/16 | $65,000 | 100% | $65,000 | $5,416.67 | $2,708.33 | 80.0 | 202.2 | 88.2 | 110% | 8.2 | Not Disputed | $2,708.34 | Not Disputed | |
| 07/01/16 | 07/15/16 | $65,000 | 100% | $65,000 | $5,416.67 | $2,708.33 | 80.0 | | 56.9 | 71% | (23.1) | Not Disputed | $2,708.34 | Not Disputed | |
| 07/16/16 | 07/30/16 | $65,000 | 100% | $65,000 | $5,416.67 | $2,708.33 | 80.0 | 150.0 | 62.4 | 78% | (17.6) | Not Disputed | $2,708.34 | Not Disputed | |
| 08/01/16 | 08/15/16 | $65,000 | 100% | $65,000 | $5,416.67 | $2,708.33 | 80.0 | | 42.9 | 54% | (37.1) | Not Disputed | $2,708.34 | Not Disputed | |
| 08/16/16 | 08/31/16 | $65,000 | 100% | $65,000 | $5,416.67 | $2,708.33 | 80.0 | 164.8 | 88.1 | 110% | 8.1 | Not Disputed | $2,708.34 | Not Disputed | |
| 09/01/16 | 09/15/16 | $65,000 | 100% | $65,000 | $5,416.67 | $2,708.33 | | 15.9 | 11.3 | | | Not Disputed | $361.02 | Not Disputed | Resigned 9/2/16; Paid for 2 Days (2/15 = 13.3% of $2,708.33) |
| Subtotal | | | | | | | | | | | | | $25,277.75 | | |

Notes:
(1) Based on 160 Hours/Month
(2) Paid $216.57 as unearned bonus (excluded from "Paid" amount).