# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

AMY BUCHANAN,                              )
                                    )
                Plaintiff,             )      Case No.: 2:19-cv-00226-GMN-VCF
      vs.                                    )
                                     )            **ORDER**
WATKINS & LETOFSKY, LLP, a Nevada          )
Limited Liability Partnership,             )
                                      )
                Defendant.            )

      Pending before the Court is Defendant Watkins & Letofsky, LLP's (W&L's) Motion for Summary Judgment, (ECF No. 28). Plaintiff Amy Buchanan ("Plaintiff") filed a Response, (ECF No. 33), and W&L filed a Reply, (ECF No. 34). For the reasons discussed below, the Court **GRANTS** W&L's Motion for Summary Judgment with respect to the federal claims and **REMANDS** the remaining state law claims.

## I.    BACKGROUND

      This case arises from Plaintiff's allegations of workplace discrimination, unpaid wages, and retaliation during her employment as an associate attorney with W&L, a Nevada limited liability partnership and law firm. (Watkins Decl. ¶ 2, Ex. B to Mot. Summ. J. ("MSJ"), ECF No. 28-3). In April 2016, Plaintiff began her employment for W&L, working on a full-time basis consisting of forty-to sixty-hour work weeks, with a salary of $65,000 per year. (Buchanan Dep. 141:1–4, 147:17–23, Ex. C to MSJ, ECF No. 28-4). Due to injuries sustained in a motor vehicle accident, Plaintiff developed a musculoskeletal condition that causes her stress, anxiety, depression, and migraine headaches, as well as inhibits her ability to sleep, think clearly, and perform everyday tasks. (Buchanan Decl. ¶ 12, Ex. 1 to Resp., ECF No. 33-2). By September 2016, Plaintiff's medical condition rendered her unable to continue full-time work,

1   and Plaintiff voluntarily resigned from her position to undergo spinal surgery. *(Id.* ¶ 11); (2016
2   Resignation Letter, Ex. F to MSJ, ECF No. 28-7).

3          In December 2016, Plaintiff and W&L entered an agreement, under which, Plaintiff
4   would return to work on a part-time basis, limiting her workweek to twenty hours for a salary
5   of $32,500. (Buchanan Decl. ¶ 17, Ex. 1 to Resp.). Upon her return, W&L assigned Plaintiff a
6   volume of work that caused her to put in forty-to sixty-hour weeks, despite her only being paid
7   half of what full-time associate attorneys make. *(Id.* ¶ 19).  Plaintiff also alleges W&L
8   manipulated her billable hour records in order to maintain Plaintiff's ineligibility for
9   performance-based bonuses. *(Id.).*

10         On repeated occasions, W&L represented to Plaintiff that she would be paid for all hours
11  worked beyond the 20 hours per week recommended by Plaintiff's doctor. *(See, e.g.*, Text
12  Message, Ex. 15 to Resp, ECF No. 33-16); (Email, Ex. 7 to Resp, ECF No. 33-8).  According
13  to Plaintiff, however, W&L has consistently declined to pay Plaintiff for her time and instead
14  forced her to rebate prior wages paid. (Buchanan Decl. ¶ 20, Ex. 1 to Resp.).  After
15  complaining about her workload, W&L agreed to a compromise under which Plaintiff would
16  work thirty hours per week, beginning in March 2017. *(Id.* ¶ 21).  W&L allegedly breached this
17  renewed agreement by assigning Plaintiff work requiring up to sixty hours per week. *(Id.* ¶ 22).

18         In May 2017, Plaintiff again expressed concerns about her workload to W&L and stated
19  that she needed to focus on her health. (May Resignation Emails WLLLP001364, Ex. G to
20  MSJ, ECF No. 28-8).  W&L then placed Plaintiff on a medical leave of absence rather than
21  accommodating her request for a reduced work schedule. (Buchanan Decl. ¶ 23, Ex. 1 to
22  Resp.).  At W&L's request, Plaintiff supplied W&L with a letter from her doctor delineating
23  her work-related limitations. (Doctor Letter WLLLP001244, Ex. G to MSJ).  In response,
24  W&L allegedly cancelled her health insurance. *(Id.*¶ 25).  Once Plaintiff confronted W&L
25  about the cancellation, W&L reinstated her health insurance. *(Id.).*

Upon determining that her requests for unpaid wages were futile, Plaintiff filed a complaint for wages with the Nevada Labor Commissioner (the "Labor Commissioner"). (Buchanan Decl. ¶ 27, Ex. 1 to Resp.).  On November 16, 2017, after acknowledging it knew of the complaint with the Labor Commissioner, W&L told Plaintiff that her health insurance would be canceled as of November 30, 2017. (*Id.*).  According to Plaintiff, this "effectively communicated that [her] employment was terminated as of that date." (*Id.*).  On September 1, 2018, Plaintiff filed a charge of discrimination under the Americans with Disabilities Act ("ADA") with the U.S. Equal Employment Opportunity Commission. (Charge of Discrim., Ex. 14 to Resp., ECF No. 33-15).

Plaintiff originally filed the instant action against W&L in Clark County District Court. (Pet. Removal, ECF No. 1).  W&L subsequently removed to this Court based on federal question jurisdiction.  Plaintiff's First Amended Complaint alleges seven causes of action: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Violation of NRS 608.190; (4) Wages Due and Owing under NRS 608.040 and NRS 608.050; (5) Retaliatory Discharge in Violation of Public Policy under Nevada law; (6) Discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101, *et seq.*; and (7) Retaliation under the ADA. (First. Am. Compl. ¶¶ 31–101, ECF No. 7).  On August 15, 2019, this Court dismissed Plaintiff's fifth cause of action for retaliatory discharge. (Order, ECF No. 13).  W&L now moves for summary judgment on the remaining claims. (*See generally* MSJ, ECF No. 28).

## II.   <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and

1  the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*,

2  398 U.S. 144, 159–60 (1970).

3      If the moving party satisfies its initial burden, the burden then shifts to the opposing

4  party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

5  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

6  the opposing party need not establish a material issue of fact conclusively in its favor.  It is

7  sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

8  parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

9  *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on

10  denials in the pleadings but must produce specific evidence, through affidavits or admissible

11  discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

12  1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical

13  doubt as to the material facts."  *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002)

14  (internal citations omitted).  "The mere existence of a scintilla of evidence in support of the

15  plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the

16  nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations

17  that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

18  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set

19  forth specific facts by producing competent evidence that shows a genuine issue for trial. *See*

20  *Celotex Corp.*, 477 U.S. at 324.

21      At summary judgment, a court's function is not to weigh the evidence and determine the

22  truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

23  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

24  in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is

25  not significantly probative, summary judgment may be granted. *See id.* at 249–50.

III.  **DISCUSSION**

    **A. ADA Claims**

      Plaintiff argues that W&L denied her request for a reasonable disability accommodation, and, in retaliation for making such a request, ultimately terminated her employment, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101, *et seq.* (Compl. ¶¶ 77–101).  To counter, W&L claims that the ADA is inapplicable here, because W&L has less than 15 employees. (MSJ 8:17–9:25).

      The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C § 12112.  An employer is a "covered entity" under the ADA, and an employer is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 12111(2), (5)(a).  In other words, the ADA is inapplicable to "very small businesses." *Clackamas Gastroenterology Associates*, *P.C. v. Wells*, 538 U.S. 440, 441 (2003).  To determine the number of employees employed by an employer, courts utilize the payroll method, which looks to whether the employer has an employment relationship with its alleged employees during the time in question by identifying each individual on the payroll list. *See Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 206–07 (1997) ("the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll").

      However, when an employer has fewer than 15 employees, plaintiffs wishing to bring a claim under the ADA may assert that the employer is so interconnected with another employer that the two form a single entity for the purposes of counting the total number of employees. *See Anderson v. Pacific Maritime Ass'n*, 336 F.3d 924, 928–29 (9th Cir. 2003).  While the

Ninth Circuit has not specifically delineated a test to determine whether two separate entities are actually operating as a single employer for the purposes of the ADA, "courts generally use Title VII precedent to interpret ADA claims." *See Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 858 n.9 (9th Cir. 2016). Title VII of the Civil Rights Act of 1964 also requires employers to have at least 15 employees to fall within the purview of the statute. *See* 42 U.S.C. § 2000e(b). When single employer issues arise in Title VII jurisprudence, the Ninth Circuit utilizes the integrated enterprise test to determine whether two separate entities operate as a single employer. *See Anderson*, 336 F.3d at 929. When considering the two entities, the integrated enterprise test requires courts to evaluate four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control. *See Kang v. U. Lim. America, Inc.*, 296 F.3d 810, 815–16 (9th Cir. 2002). "The third factor, centralized control of labor relations, is the 'most critical'" to the analysis. *Id.* (quoting *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999)).

Here, Plaintiff recognizes that W&L alone did not have 15 employees for the requisite time period under the ADA, but asserts that W&L meets the employee minimum when combined with its California affiliated firm: Watkins & Letofsky, a California Limited Liability Partnership ("W&L California"). (Resp. 20:10–23:6, ECF No. 33). W&L claims that it is not an integrated enterprise with W&L California for the purposes of the ADA, but even if it was, W&L and W&L California never had a combined roster of 15 employees for at least 20 weeks during the period at issue in this case. (Reply 13:1–17:27, ECF No. 34).

## 1. Interrelation of Operations

"Evidence of interrelated operations can include common offices, long distance shipping, bank accounts, payroll preparation, and shared facilities." *See NLRB v. Transcon. Theaters Inc.*, 568 F.2d 125, 129–30 (9th Cir.1978). For example, in *Kang*, the Ninth Circuit

found that the two entities in question had interrelated operations because they shared a facility and the financial accounts used to fund payroll and bills. *Kang*, 296 F.3d 810, 815–16.

Plaintiff claims that W&L and W&L California have interrelated operations because they share an email server, phone number, and website, and both LLPs handle payroll using PAYCHEX, a payroll company. (Resp. 21:4–24); (Watkins Decl. ¶ 24, Ex. K to Reply). However, the website address provided as evidence by Plaintiff indicates that W&L and W&L California have separate offices and phone numbers: a Nevada address and phone number for W&L and a California address and phone number for W&L California. *See* Watkins & Letofsky, LLP, www.wl-llp.com (last visited March 13, 2021). Further, to show that W&L and W&L California share payroll, Plaintiff cites a document from PAYCHEX, certifying the number of employees employed by both W&L and W&L California. (*See* Employee Count Records, Ex. J to MSJ, ECF No. 28-11). While this document may indicate that both W&L and W&L California utilize PAYCHEX's services for their payroll preparation, it provides no evidence of any financial information demonstrating that both LLPs use the same account to pay their employees or other bills. In fact, Daniel Watkins, a founding partner of both W&L and W&L California, testified that the two separate business entities have separate incomes, keep sperate ledgers of income and expenses, and pay their respective taxes separately. (Watkins Decl. ¶ 4, Ex. K to Reply, ECF No.34-2). Without any evidence of shared facilities or intermingled accounts, the interrelation of operations factor does not tip strongly in Plaintiff's favor. *See Kang*, 296 F.3d 810, 815–16.

## 2. Common Management

As to the second factor, W&L admits that both W&L and W&L California are managed by Daniel Watkins and Brian Letofsky, since they are the only partners of both firms. (*See* Reply 13:28–14:10). Accordingly, the Court finds that this factor strongly favors Plaintiff's contention that W&L and W&L California operate as a common enterprise.

### 3.  Centralized Control of Labor Relations

The third, and "single most important factor," equates to "day-to-day . . . control of labor relations." *J.M. Tanaka Constr., Inc. v. Nat'l Labor Relations Bd.*, 675 F.2d 1029, 1033–34 (9th Cir. 1982).  This includes an assessment of who has the authority to make personnel decisions, such as hiring and firing, and control daily business procedures. *See, e.g.*, *Mel O v. Flynn Group, Inc.*, No. 2:16-cv-1712-JCM-NJK, 2018 WL 2284373, at *4 (D. Nev. Feb. 2, 2018); *Vandermeer v. Douglas County*, 15 F. Supp. 2d 970, 977 (D. Nev. 1998).

Plaintiff asserts that there is a centralized control of labor relations at W&L and W&L California because Daniel Watkins and Brian Letofsky make the decisions regarding "employment matters," such as "hiring and firing of employees, employee discipline, performance evaluations, awards, promotions and demotions, scheduling, work assignments, training, and compensation," for both firms. (Resp. 22:8–22).  However, Plaintiff neglects to point to any evidence supporting these assertions.  Providing mere conclusory allegations without factual data, as Plaintiff has done here, is not enough to survive summary judgment. *See Taylor*, 880 F.2d at 1045.  Because of this lack of evidence, the third factor does not weigh in Plaintiff's favor to establish that W&L and W&L California are an integrated enterprise.

### 4.  Common Ownership and Financial Control

Finally, Plaintiff claims that it is "beyond dispute" that W&L and W&L California are both owned by Daniel Watkins and Brian Letofsky. (Resp. 22:23–23:2).  The Court agrees that W&L and W&L California are certainly owned by the same individuals.  However, Plaintiff has provided no financial information and does not even speculate about the financial control of either firm.  As noted above, Daniel Watkins testified that W&L and W&L California maintain separate incomes and ledgers, making it difficult for the Court to conclude that the two firms have unilateral financial control without evidence to the contrary. (Watkins Decl. ¶ 4, Ex. K to Reply).  Therefore, this factor does not weigh strongly in Plaintiff's favor.

While Plaintiff has provided some evidence that W&L and W&L California have common ownership and management, these factors alone cannot establish that the two firms are a common enterprise, especially when considering that Plaintiff provided no evidence showing centralized control of labor relations, which is the most probative factor in the analysis. *See Kang*, 296 F.3d at 815–16. *See also Vandermeer*, 15 F. Supp. 2d at 977 ("such overlap of management-level officials alone would not necessarily preclude a finding that [the two entities] are separate employers").  Additionally, Plaintiff neglected to name W&L California as a defendant in this case and did not proffer the integrated enterprise theory until responding to the present Motion, which further weakens the argument that the two firms form a single employer. *See Mel O*, 2018 WL 2284373, at *4.

In sum, Plaintiff has failed to provide enough evidence for the Court to conclude that W&L and W&L California operate as an integrated enterprise, or that a genuine issue of material fact exists on the matter.  As such, the Court will not consider W&L and W&L California to be an integrated enterprise for the purposes of the employee count under the ADA; the Court will only consider the employee count at W&L in Nevada.  Because W&L only had two employees during 2016 and 2017, the ADA does not apply to W&L. (*See* Walker Decl. ¶ 22, Ex. K to Reply ("During the time in question, the only people employed by W&L, a Nevada limited liability partnership, included Eran Forster and Plaintiff.)).  The Court grants summary judgment in favor of W&L with regards to Plaintiff's ADA claims.

Because the Court grants summary judgment in favor of W&L on Plaintiff's ADA claim, the only cause of action arising under federal law, there are no remaining claims over which the court has original jurisdiction.  While a court can exercise supplemental jurisdiction over state law claims, it may decline to do so where "all claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3). *See also Kohler v. Flava Enterprises Inc.*, 826 F. Supp. 2d 1221, 1232 (S.D. Cal. 2011) (declining to exercise supplemental

jurisdiction over the plaintiff's remaining state law claims after granting summary judgment in favor of the defendant as to the only federal claim, which arose under the ADA). Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and remands the case to state court.

## IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that W&L's Motion for Summary Judgment, (ECF No. 28), is **GRANTED** with respect to Plaintiff's sixth and seventh causes of action, which arise under the ADA.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Eighth Judicial District Court, Clark County, Nevada. The Clerk is directed to close the case.

**DATED** this  29  day of March, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court