UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| AMY BUCHANAN,<br><br>    Plaintiff,<br>vs.<br><br>WATKINS & LETOFSKY, LLP.,<br><br>    Defendant. | Case No.: 2:19-cv-00226-GMN-BNW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 67), filed by Defendant Watkins & Letofsky, LLP ("W&L"). Plaintiff Amy Buchanan filed a Response, (ECF No. 72), to which Defendant filed a Reply, (ECF No. 73). The Court **GRANTS, in part, and DENIES, in part,** Defendant's Motion for Summary Judgment. Because the Court finds Defendant is not a covered employer under the Americans with Disabilities Act ("ADA"), the Court **GRANTS** summary judgment as to the ADA claims. And because the Court does not currently maintain jurisdiction over the state law claims, the Court **DENIES** summary judgment for those claims.

I. **BACKGROUND**

The Court incorporates by reference the background section stated in this Court's Order Granting W&L's first Motion for Summary Judgment, ECF No. 42. Plaintiff originally filed the instant action against W&L in the Eighth Judicial District Court. (Pet. Removal, ECF No. 1). W&L subsequently removed to this Court based on federal question jurisdiction. Plaintiff's First Amended Complaint brings claims for (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) violation of NRS 608.190, (4) wages due and owing with statutory penalty under NRS 608.040 and/or NRS 608.050, (5) retaliatory discharge in violation of public policy under Nevada law, (6) discrimination under Americans with

Disability Act, and (7) retaliation under American with Disabilities Act. (*See generally* FAC). Defendant filed a motion to dismiss Plaintiff's First Amended Complaint. (*See generally* Mot. Dismiss, ECF No. 10). Plaintiff's fifth claim for retaliatory discharge, otherwise known as tortious discharge, in violation of public policy, was dismissed with prejudice by this Court on August 15, 2019. (*See generally* Order Den. Mot. Dismiss, ECF No. 13).

This Court granted Defendant's first Motion for Summary Judgment, (ECF No. 28), finding that Plaintiff's claims under the ADA failed as a matter of law because W&L's Nevada office had less than 15 employees, and thus, was not a covered employer under the ADA. (*See generally* Order Granting W&L's Mot. Summ. J., ECF No. 42). This Court's determination was predicated on its conclusion that W&L's Nevada office was not an integrated enterprise with its California affiliated firm, Watkins & Letofsky, a California Limited Liability Partnership. (*Id.*). Moreover, this Court remanded the remaining state law claims to Nevada state court. (*Id.*).

Plaintiff appealed the Court's Order to the United States Court of Appeals for the Ninth Circuit. (Not. Appeal, ECF No. 43). The Ninth Circuit reversed, finding that when viewing the evidence in the light most favorable to Plaintiff, a jury could potentially find that W&L's Nevada and California offices were an integrated enterprise. (*See generally* Op. of USCA, Ninth Cir., ECF No. 46). The Ninth Circuit remanded to this Court to determine whether W&L's two offices, even if viewed as an integrated enterprise, still had fewer than 15 employees. (*Id.* at 9). The parties then filed Supplemental Briefs on this issue. (ECF Nos. 52, 53). This Court subsequently denied the Motion for Summary Judgment without prejudice finding that W&L may refile its Motion for Summary Judgment following additional discovery. (Order Denying Mot. Summ J., ECF No. 55). Out of an abundance of caution, and to minimize the risk of unnecessary future litigation, the Court reopened discovery for the limited purpose of determining whether Susan Watkins and Nancy Letofsky were employees or independent

contractors during the relevant time period. (*Id.*).  Upon the conclusion of the re-opened discovery period, Defendant filed its second Motion for Summary Judgment, (ECF No. 67). Defendant moves for summary judgment on all remaining claims.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and

quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Defendant moves for summary judgment on all of Plaintiff's remaining claims. For the reasons discussed below, the Court finds Defendant is not a covered employer under the ADA and as such, Plaintiff's ADA claims cannot move forward. Moreover, the Court lacks jurisdiction over Plaintiff's state law claims.

### A. ADA Claims

Plaintiff brings claims for discrimination and retaliation under the Americans with Disability Act ("ADA"). (*See generally* FAC, ECF No. 7). She alleges "she informed her superiors. . . regarding her medical condition and disability and her need for an accommodation" which included a reduced hour schedule. (*Id.* ¶ 81). And that "Defendant, while stating that it would accommodate Plaintiff, *de facto* denied these requested reasonable accommodations." (*Id.*) She also alleges that "Defendant retaliated against Plaintiff for her having lodged a complaint with the Nevada Labor Commissioner for wages that are due to her." (*Id.* ¶ 25).

The ADA is a federal civil rights law that prohibits discrimination against people with disabilities in everyday activities. 42 U.S.C. § 12101. Among other things, the ADA prohibits employers from discriminating against employees with disabilities. *Id.* § 12112. Qualified employees may bring claims under the ADA against covered employers. *Id.* § 12101. Defendant argues it is not a covered employer under the ADA because it does not have 15 employees, so Plaintiff's ADA claims fail as a matter of law. (*See generally* Mot. Summ. J.,

ECF No. 67).  In the alternative, Defendant argues even if this Court did find Defendant had 15 employees in 2016 and 2017, Defendant did not maintain 15 employees for the statutory time period to be considered a qualified employer for purposes of the ADA. (*Id.* 13:20–21).

The Court must first take up this threshold issue and analyze whether Defendant is subject to the ADA.  If Defendant is not subject to the ADA, then Plaintiff's claims fail as a matter of law and summary judgment must be granted.  To be a covered employer under the ADA, an employer must have "15 or more employees for each working day in each of 20 or more calendar weeks." 42 U.S.C. § 12111(5).  The Ninth Circuit has instructed the Court to consider Defendant's argument that "even if W&L Nevada and W&L California were an integrated enterprise, they together had fewer than 15 employees." (Op. of USCA, Ninth Circuit).  Thus, the Court takes up the threshold issue of whether W&L had at least (a) 15 employees and (b) for 20 weeks in 2016 and 2017.

1. **Number of employees**

The determinable issue here is whether two individuals, Susan Watkins and Nancy Letofsky, who are not classified as employees by W&L and who remained off the payroll during the time period at issue, are employees or independent contractors.  Defendant maintains that W&L had a combined employee count that "ranged from 9 to 13 employees during the entire time plaintiff was employed by W&L." (Mot. Summ. J. 10:17–18); (Paychex Payroll Ex. J to Mot. Summ. J., ECF No. 67-11).  Indeed, Defendant admits to having at most 12 employees during various weeks of 2016 and 13 employees in 2017. (Mot. Summ. J. 10:17–18).

Courts use a variety of tests to determine independent contractor status versus employment status between the hired party and the hiring party.  Defendant argues that the Court should use the "payroll method" to determine whether Susan Watkins and Nancy Letofsky were employees. (Mot. Summ. J. 9:27–28).  In employment law contexts, courts have

used the "payroll method" when applying a variety of employment law statutes, which essentially counts the number of people on the payroll to determine how many employees an employer has.[1]  Courts have also used the economic realities test in employment law contexts, which is comparable to the common law approach of applying agency doctrine. *Lutcher v. Musicians Union Local 47*, 633 F.2d 880 (9th Cir. 1980).

The test the Court finds most appropriate here is the "ABC Test" adopted by the California Supreme Court in *Dynamex Operations West, Inc. v. Superior Court*, which Plaintiff argues the Court should apply. 416 P.3d 1 (Cal. 2018); (Resp. 24:23–25:1, ECF No. 72).  This test is appropriately applied because Susan Watkins and Nancy Letofsky reside and primarily work in California.  The ABC Test requires the hiring entity to meet its burden of establishing each of the following factors for a hired party to be classified as an independent contractor:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

*Dynamex*, 416 P.3d at 35.

    a. Susan Watkins

The Court begins with a discussion of Defendant's bookkeeper Susan Watkins' employment relationship with W&L during 2016 and 2017.  The Court takes up factor A first. "Depending on the nature of the work and overall arrangement between the parties, a business need not control the precise manner or details of the work in order to be found to have

---

[1] *Walters v. Metro. Educ. Enters., Inc.* 519 U.S. 202, 208 (1997) (Title VII); Equal Employment Opportunity Commission Notice No. N–915–052, Policy Guidance: Whether Part–Time Employees Are Employees (Apr.1990) (Age Discrimination and Employment Act); 29 U.S.C. § 2611(4)(A)(i) and 29 CFR §§ 825.105(b)–(d) (Family Leave and Medical Act); *Bradley v. Monarch Constr., Inc.*, 35 F. App'x 420, 421 (8th Cir. 2002) (Americans with Disability Act).

maintained the necessary control that an employer ordinarily possesses over its employees, but does not possess over a genuine independent contractor." *Dynamex*, 416 P.3d at 35. Susan Watkins testified that she did not collaborate or work with any other employee of W&L in completing her work. (Susan Watkins Decl. ¶ 6, Ex. A to Mot. Summ. J., ECF No. 67-1). Susan Watkins conducted her work at her own discretion using methodologies, reporting formats, and accounting principles of her own choosing. (*Id.*). She had opportunity to realize profit and/or loss independent of W&L. (*Id.*). Susan Watkins did not manage or control W&L. (*Id.*). The revenue of W&L was not impacted at all by Susan Watkins performance. (*Id.*). Susan Watkins provided equipment, tools, her own utilities, laptop, and supplies necessary to perform her accounting duties including Quickbooks. (*See generally* Susan Watkins Dep. at 42–44, Ex. 19 to Resp., ECF No. 72-19).

She maintained a home office and could perform all of her work from her home office. (Susan Watkins Decl. ¶ 8, Ex. A to Mot. Summ. J.); (Susan Watkins Dep. 37:6–12, Ex. 19 to Resp.). She did not have a set office space at W&L. (Susan Watkins Dep. 37:6–25). Susan Watkins testified that W&L did not direct when, where, or how she performed her work. (Susan Watkins Decl. ¶ 11, Ex. A to Mot. Summ. J.). Susan Watkins set her own hours, determined her own schedule, and was free to come and go from W&L offices as she pleased. (*Id.*). During 2016 and 2017, Susan Watkins was not subject to discipline, nor any disciplinary regime instituted at W&L. (*Id.* at ¶ 10). She was not subject to any training requirements. (*Id.*).

Plaintiff points out another key part of Susan Watkins' testimony that the Court considers in its analysis. Plaintiff argues that as a bookkeeper, Susan Watkins "would naturally be required to adhere to standards for those activities that are imposed on Attorneys Watkins and Letofsky by law, such as with trust accounts." (Resp. 26:7–9). Moreover, Plaintiff argues that "attorneys have a non-delegable duty to control the finances and the trust accounts." (*Id.* 26:9–10). And lastly, "Susan testified that her job includes receiving settlement checks and

depositing them in the bank," which Plaintiff argues is "something that the firm and its attorneys must keep control of." (*Id.* 26:10–11). But Plaintiff fails to cite any case law or professional rules of conduct to bolster her claims. Thus, the Court finds that Defendant has met its burden of establishing factor A of the ABC test and Plaintiff does not establish a genuine dispute of material fact.

As for factor B, "[w]orkers whose roles are most clearly comparable to those of employees include individuals whose services are provided within the usual course of the business of the entity for which the work is performed and thus who would ordinarily be viewed by others as working in the hiring entity's business and not as working, instead, in the worker's own independent business." *Dynamex*, 416 P.3d at 37. Defendant testified that Susan Watkins performed highly skilled accounting services for both offices. (Dan Watkins Decl. ¶ 24, Ex. B to Mot. Summ. J., ECF No. 67-2). Specifically, Mrs. Watkins assisted with worker's compensation audits, client trust account audits, collaborated with the firm CPA and provided other accounting and bookkeeping tasks. (Susan Watkins Dep. 20:6:–20, Ex. 19 to Resp.).

Defendant asserts that W&L (CA) and W&L (NV) are not in the regular business of performing accounting services. (Dan Watkins Decl. ¶ 27, Ex. B to Mot. Summ. J.). Plaintiff, on the other hand, argues that Susan Watkins performed work that was within the normal operational and administrative course of the business of the law firm. (Resp. 12:25–26, ECF No. 72). Specifically, Plaintiff expresses that Susan testified to signing checks on the W&L's general account and being an authorized signer on that business account along with Dan Watkins and Brain Letofsky. (Susan Watkins Dep. 69:7–70:1, Ex. 19 to Resp.). Plaintiff argues that bookkeeping and billing are "integral functions [of a law firm], as distinguished from plumbers that might fix the firm's toilets, or carpet cleaners that might clean the flooring." (Resp. 27:11–13). Plaintiff further argues that "accounting and billing coordinators are the types of roles that are typically performed by the employees of a law firm." (Resp. 27:20–21).

There are enough facts in the record to establish that Susan Watkins was providing services within the usual course of a law firm business. As such, the Court finds that Defendant has not met its burden of establishing factor B of the ABC test. Moreover, even if Defendant had met its burden, Plaintiff has presented evidence to establish that a genuine issue of material fact exists to whether factor B is met because a fact finder would need to determine whether bookkeeping and billing are within the usual course of a law firm business.

Lastly, as for factor C, "a business cannot unilaterally determine a worker's status simply by assigning the worker the label 'independent contractor' or by requiring the worker, as a condition of hiring, to enter into a contract that designates the worker an independent contractor. *Dynamex*, 416 P.3d at 37. Moreover, "the term 'independent contractor,' when applied to an individual worker, ordinarily has been understood to refer to an individual who *independently* has made the decision to go into business for himself or herself." *Id.* "Such an individual generally takes the usual steps to establish and promote his or her independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers, and the like." *Id.* at 39. "The fact that a company has not prohibited or prevented a worker from engaging in such a business is not sufficient to establish that the worker has independently made the decision to go into business for himself or herself." *Id.*

Susan Watkins testified that she was self-employed during 2016 and 2017, and her only client was W&L. (*See generally* Susan Watkins Dep. at 13–18, Ex. 19 to Resp.). Susan Watkins worked on her own and provided logistical, accounting, and I.T. services from 1998 to 2018. (*Id.* 14:2–21). She performed work for another attorney from 2008 to 2010 and a spa business from 2008 to 2009. (*Id.* 14:22–23; 17:2–4). Susan Watkins spent two years in junior college taking classes in accounting, business communication, and economics so that she could "learn more with [her] career should [she] not get a full degree." (*Id.* 12:21–13:1). Susan did

not have a written agreement with W&L designating her as an independent contractor. (Dan Watkins Dep. 40:4–7, Ex. 18 to Resp., ECF No. 72).

But Susan testified that she did not have an LLC, or any other business entity set up for her business. (Susan Watkins Dep. 44:9–17, Ex. 19 to Resp). She also did not have a business license from any jurisdiction, did not maintain business insurance for herself, and did not formally advertise her business. (Susan Watkins Dep. 44:18–25, 44:3–5, 67:6–24, Ex. 19 to Resp). It is clear from the record that Susan Watkins did not take "the usual steps to establish and promote [her] independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers, and the like." *Dynamex*, 416 P.3d at 39. Susan Watkins was free to operate independent businesses and develop entrepreneurial opportunities. (Susan Watkins Decl. ¶ 9, Ex. A to Mot. Summ. J.). She was not contractually bound to work exclusively for W&L (CA) or W&L (NV) and had the freedom to solicit accounting clientele of her own. (*Id.*). But, "[t]he fact that a company has not prohibited or prevented a worker from engaging in such a business is not sufficient to establish that the worker has independently made the decision to go into business for himself or herself." *Dynamex*, 416 P.3d at 39. Thus, Defendant has not met its burden of establishing that factor C is met.

In conclusion, Defendant has only met its burden of establishing factor A of the ABC test. Because the ABC Test requires the hiring entity to meet its burden of establishing *each* of the three factors, Defendant has not met its burden of establishing that Susan Watkins is an independent contractor under the ABC Test.

      b. Nancy Letofsky

The Court now turns to a discussion of Defendant's office manager and paralegal Nancy Letofsky's employment relationship with W&L during 2016 and 2017. The Court first takes up factor A. Nancy testified that she had opportunity to realize profit and/or loss independent of

W&L. (Nancy Letofsky Decl. ¶ 3, Ex. K to Mot. Summ. J., ECF No. 67-12).  Nancy Letofsky did not manage or control W&L. (*Id.*). The revenue of W&L was not impacted at all by Nancy Letofsky's performance. (*Id.*).  Nancy Letofsky maintained a separate home office, but always had a dedicated office or workspace at L&W. (*Id.* ¶ 5); (Nancy Letofsky Dep. 23:4–10, Ex. 20 to Resp, ECF No. 72-20).  Nancy Letofsky provided equipment, tools, and supplies necessary to perform her work from home, but testified that she was reimbursed for some of her supplies. (Nancy Letofsky Decl. ¶ 5, Ex. K to Mot. Summ. J.); (Nancy Letofsky Dep. 35:14–26:4, Ex. 20 to Resp).  Nancy Letofsky was not subject to discipline, nor to any disciplinary regime instituted at W&L (CA) or W&L (NV). (Nancy Letofsky Decl. ¶ 7, Ex. K to Mot. Summ. J.) She was not subject to any training requirements. (*Id.*).  Nancy Letofsky testified that W&L did not direct when or where to perform her work. (*Id.* ¶ 8).  Nancy Letofsky set her own hours, determined her own schedule, and was free to come and go from W&L offices as she pleased. (*Id.*).

Plaintiff argues that Nancy Letofsky as "the Office Manager and Paralegal would be closely managed and directed by the attorney managers as she is drafting legal documents for the attorneys to sign and use for filing with courts or sending out demand letters that the attorneys are ultimately responsible for and she does periodically have to consult the attorneys for input when she is unsure of what causes of action to use in a complaint." (Resp. 26:13–17). Plaintiff claims that "Nancy knew little to nothing about being a law clerk or a paralegal until attorney employees of W&L taught her how to do it." (Resp. 26:19–20).  The Court finds this argument to have merit because Nancy testified that she learned how to be a paralegal as her job went on at W&L. (Nancy Letofsky Dep. 15:17–23, 28:14–29:11, Ex. 20 to Resp.).  Plaintiff also argues that "the attorneys, being her trainers, controlled what she did and how she did it." (*Id.* 21–22).  Moreover, the Office Manager work that Nancy has always performed includes onboarding employees and making sure that their new hire paperwork is in order. (Nancy

Letofsky Dep. 29:13–30:17, Ex. 20 to Resp.). Thus, the Court finds that Defendant has met its burden of establishing factor A, but Plaintiff presents enough evidence to establish a genuine dispute of material fact.

As for factor B, Nancy Letofsky worked as an office manager and paralegal during 2016 and 2017. (Nancy Letofsky Dep. 15:13, Ex. 20 to Resp.). Nancy Letofsky testified that during 2016 and 2017 W&L's main clients were insurance companies. (Nancy Letofsky Dep. 16:22, Ex. 20 to Resp.). As a paralegal, when W&L received a new file from an insurance company client, it would go directly to Nancy Letofsky, she would assign the claim a file number, and then she would assign the file to an attorney. (*Id.* 16:22–17:5, Ex. 20 to Resp.). She would also prepare demand letters and complaints for Defendant to review. (*See generally id.* at 19–25, Ex. 20 to Resp.). As an office manager, Nancy Letofksy would conduct new employee paperwork, order supplies for the office, contact the copier company if the copier did not work, and order postage for the postage meter. (*See generally id.* at 18:11–22, Ex. 20 to Resp.). Plaintiff argues that managing the office and paralegal work are "integral functions [of a law firm], as distinguished from plumbers that might fix the firm's toilets, or carpet cleaners that might clean the flooring." (Resp. 27:11–13). Plaintiff further argues that office managers and paralegals "are the types of roles that are typically performed by the employees of a law firm." (Resp. 27:20–21). Based on the type of work Nancy Letofksy performed, the Court finds that Defendant has not met its burden of establishing factor B of the ABC test.

As for factor C, Nancy Letofsky testifies that she worked as an independent contractor during her role as office manager and paralegal in 2016 and 2017. (Nancy Letofsky Decl. ¶ 3, Ex. K to Mot. Summ. J); (Nancy Letofsky Dep. 15:13, Ex. 20 to Resp.). During Nancy Letofsky's deposition she testified that she had never worked as a paralegal or office manager before W&L. (Nancy Letofsky Dep. 21:2–7, Ex. 20 to Resp., ECF No. 72-20). But in her Declaration, she testified that she "started work as a paralegal for the firm of Pierce & Weiss in

approximately 2007." (Nancy Letofsky Decl. ¶ 2, Ex. K to Mot. Summ. J., ECF No. 67-12). It is unclear from the Declaration when she stopped working as a paralegal for Peirce and Weiss. (*See id.*).[2] Nancy Letofsky did not go to paralegal school, but instead became a paralegal "by virtue of working in a law office" and specifically learned from the attorneys at W&L. (Nancy Letofsky Dep. 15:17–23, 28:14–29:11, Ex. 20 to Resp.).

Nancy did not have a written agreement with W&L designating her as an independent contractor. (Dan Watkins Dep. 40:4–7, Ex. 18 to Resp.). She also did not have a business license from any jurisdiction and did not maintain business insurance for herself. (Nancy Letofsky Dep. 26:22–27:5, 27:6–11, Ex. 20 to Resp). It is clear from the record that Nancy Letofsky did not take "the usual steps to establish and promote [her] independent business—for example, through incorporation, licensure, advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers, and the like." *Dynamex*, 416 P.3d at 39.

Nancy Letofsky testified that she is free to operate independent businesses and develop entrepreneurial opportunities. (Nancy Letofsky Decl. ¶ 6, Ex. K to Mot. Summ. J.) She is not contractually bound to work exclusively for W&L (CA) or W&L (NV) and has the freedom to solicit clientele of her own as a paralegal. (*Id.*). But, "[t]he fact that a company has not prohibited or prevented a worker from engaging in such a business is not sufficient to establish that the worker has independently made the decision to go into business for himself or herself." *Dynamex*, 416 P.3d at 39. Thus, Defendant has not met its burden of establishing that factor C is met.

In conclusion, Defendant has only met its burden of establishing factor A of the ABC test. Because the ABC Test requires the hiring entity to meet its burden of establishing *each* of

---

[2] The Declaration states: "I worked there for approximately years." (Nancy Letofsky Decl. ¶ 2, Ex. K to Mot. Summ. J., ECF No. 67-12).

the three factors, Defendant has not met its burden of establishing that Nancy Letofsky is an independent contractor under the ABC Test.

**2. 20 Week Requirement**

Because the Court concludes that a reasonable juror could find that W&L had 15 employees at times, with the inclusion of Susan Watkins and Nancy Letofsky, the Court must now determine whether it is possible that W&L had 15 employees for each working day for at least 20 weeks in 2016 and 2017. Defendant avers that even if the Court found that W&L had 15 or more employees, W&L did not have 15 or more employees for 20 weeks as required for them to be a covered employer under the ADA. (Mot. Summ. J. 13:20–21).

Defendant negates Plaintiff's assertion that W&L was covered employer under the ADA in 2016. Even if Susan Watkins and Nancy Letofsky were to be classified as employees in 2016, there are no weeks in 2016 that W&L could have had 15 employees for the entire work week because the highest number of individuals classified as employees was 12. (Supplemental Payroll Records 2, Ex. M to Mot. Summ. J., ECF No. 67-14). Plaintiff seems to concede this point because she did not present any evidence to establish that a genuine issue of material fact exists as to how many employees W&L had each week in 2016.

Defendant also negates that W&L was a covered employer under the ADA in 2017. Defendant argues "from January 1, 2017, through May 14, 2017 when Plaintiff went on indefinite leave, the largest number of employees listed in any given week is 12." (Mot. Summ. J. 14:17–15:1). But Defendant's statement regarding the employee count from January 1, 2017, through May 14, 2017, is untrue. Defendant's own exhibit makes clear that the largest number of employees in any given week is actually 13, from January 1, 2017, through May 14, 2017. (Supplemental Payroll Records 1–2, Ex. M to Mot. Summ. J.) (identifying the week starting on January 29, 2017, and February 19, 2017, as having 13 employees for each working day). Adding both Nancy Letofsky and Susan Watkins brings the total to 15 for those two weeks.

From May 15 to the end of the year, Plaintiff claims that the number of employees identified does not include her even though she continued to be employed while on leave. (Mot. Summ. J. 14:17–15:1). As such, Plaintiff argues that the number of employees listed from May 15 to the time her employment relationship with W&L ceased should be increased by three to account for herself, Susan Watkins, and Nancy Letofsky. (Resp. 9:19–26). Even when adding three employees to the total from May 15, 2017, to November 30, 2017, when Plaintiff's employment relationship with Defendant ceased, the Court counts 17 weeks with 15 employees for the entire year. (Supplemental Payroll Records 1–2, Ex. M to Mot. Summ. J.)

Plaintiff attempts to put forth evidence to establish that a genuine issue of material fact exists as to how many employees W&L had each week in 2017, but does not succeed. She argues that there were 27 weeks that had 15 or more employees when accounting for Susan Watkins, Nancy Letofsky, and Plaintiff when she went on medical leave. But Plaintiff does not explain how she counted 27 weeks. Moreover, Plaintiff provides a table of 2017 dates that she contends had 15 employees, but the days of the week vary with some days being a Tuesday, some a Wednesday, etc. (Resp 9:4–8). It is true that some of the weeks Plaintiff brings up had days in which there could have been 15 employees, but to be covered under the ADA an employer must have "15 or more employees *for each working day* in each of 20 or more calendar weeks." 42 U.S.C. § 12111(5) (emphasis added). Put another way, if an employer had 15 employees Monday to Thursday, but then on Friday only had 14, that week does not count toward the 20-week requirement.

In sum, Plaintiff's ADA claims fail as a matter of law because Defendant is not a covered employer under the ADA. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's ADA claims is granted.

**B. State Law Claims**

The Court no longer has jurisdiction over the state law claims.[3] While a court can exercise supplemental jurisdiction over state law claims, it may decline to do so where "all claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3). *See also Kohler v. Flava Enterprises Inc.*, 826 F. Supp. 2d 1221, 1232 (S.D. Cal. 2011) (declining to exercise supplemental jurisdiction over the plaintiff's remaining state law claims after granting summary judgment in favor of the defendant as to the only federal claim, which arose under the ADA). Furthermore, once a federal district court remands a case to state court, it generally loses jurisdiction over that case. *Harmston v. Cty and Cnty of San Francisco*, 627 F.3d 1273, 1278 (9th Cir. 2010) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714 (1996)).

After this Court granted Defendant's first Motion for Summary Judgment, the Court declined to exercise supplemental jurisdiction and remanded the state law claims to state court. (*See generally* Order Granting W&L's Mot. for Summ. J.). The state court has reactivated Plaintiff's case, and the state law claims have continued under the jurisdiction of state court for some time. (Resp. 15:14–15). Thus, the Court denies Defendant's Motion for Summary Judgment as to the state law claims because the Court does not have jurisdiction over those claims.

---

[3] The state law claims are as follows: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) violation of NRS 608.190, and (4) wages due and owing with statutory penalty under NRS 608.040 and/or NRS 608.050.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 67), is **GRANTED in part and DENIED in part.** The Court GRANTS summary judgment for Defendant on the ADA claims. And the Court DENIES summary judgment for Defendant on the state law claims.

The Clerk of Court is kindly directed to close this case.

**DATED** this __29__ day of September, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court